BORDER QUEEN KITCHEN CABINET COMPANY *v.* GRAY.

4-3621

Opinion delivered December 3, 1934.

*Daily & Woods, C. W. Knott* and *J. S. Dailey,* for appellant.

*Roy Gean,* for appellee.

BUTLER, J. Claude Gray, the appellee, brought this action to recover damages for an injury which he sustained, alleged to have been occasioned by the negligence of a fellow-servant. The answer specifically denied the allegation of negligence, and, as affirmative defenses, pleaded assumption of risk and contributory negligence. At the conclusion of the testimony, the appellant, defendant in the court below, moved for a directed verdict, which motion was overruled. The case was submitted to the jury on instructions declaring the law as to negligence, assumption of risk and contributory negligence which are conceded to be correct.

The sole ground urged for reversal is based on the contention that there was no substantial testimony tending to establish the negligence of the fellow-servant, but, on the contrary, that the injury to appellee was the result of one of the ordinary risks of employment which he had assumed.

The argument is made that the testimony of appellee himself fails to show any negligence on the part of his fellow workman and affirmatively discloses the fact that the injury complained of happened because of the inherent dangers to be expected and those ordinarily incident to the character of work being done. To sustain this argument, certain parts of the appellee's testimony are quoted which do tend to support the contention. During his examination it is apparent that he became con-

fused, causing him to make some contradictory statements, but these serve only to affect his credibility, and the jury resolved that question in his favor.

There were only two witnesses to the incident out of which the injury grew, Gray, the appellee, and Bob Dean, his fellow-servant. Their testimony is in conflict as to the vital question in the case, that of Dean tending to show that, if any accident happened to the appellee, it was one which could not have been foreseen or avoided, and that Dean, himself, was at all times acting with due prudence and caution.

It appears that appellee and Dean were working in the finishing department of appellant's manufactory, each operating a machine used in spraying varnish on the finished products. They worked in a large room containing the equipment used in that particular department in which steel drums containing liquid varnish were stored to be used in that room as needed. These drums were about three or four feet long, made so a spigot could be inserted in one end through which the liquid could be drawn as required. When in use, they were placed on racks about eighteen inches above the floor, high enough to set a five gallon can under the spigot. The drum used by Dean became empty. He asked the appellee to help him move another to, and upon, the rack. A drum filled with varnish was lying about fifteen feet from this place.

When appellee's testimony is considered as a whole and fairly interpreted, it tends to establish these facts: Appellee took hold of the drum at the spigot end and Dean at the opposite end. They lifted it about twelve or fourteen inches from the floor and moved toward the rack, Dean going backward. It was intended that the end where the spigot was to be inserted would rest on the rack, and this made it necessary for them to turn. This movement began when they were about three feet from the rack and, when completed, would place appellee and his end next to the rack so that it could first rest thereon. As they were making this turn, or immediately after it was made, Dean unexpectedly and suddenly elevated his end of the drum throwing the entire weight

upon the appellee, who (as he expressed it) had to hold up the weight of the drum because he had no opportunity to get out of the way. When this occurred, he felt pain in the region of the small of his back, and when they had placed the drum on the rack he told Dean that he had hurt or wrenched his back in some way. At that time he did not appreciate the extent of his injury, and made no complaint to Dean relative to the manner in which the latter had handled his end of the drum. After placing the drum, appellee resumed his ordinary work, which required no great physical exertion, and continued to work for about three days. On the morning of the fourth day he was unable to rise. A doctor was called, and appellee has been unable to perform any labor since that time, that is to say, from the 24th day of October, 1933, down to the date of trial, March 7, 1934.

Dean denied that there was any change in the manner in which they were carrying the drum, but stated that they carried it straight from where it was lying to the rack, and placed it upon it—that there was no sudden uplift by him of the end of the drum he was carrying.

This testimony raised an issue of fact which the jury resolved in favor of the appellee.

The appellee testified that he had helped carry drums many times and helped set them on the racks; that at this time they were proceeding to perform that work in the usual and customary manner. He also stated that it was unnecessary for one carrying an end of the drum to warn the other at the time they were about to lift it and place it on the rack, and that one of ordinary common sense would know that it was time to lift and that both would then lift upward to place the drum in position. These statements, and other similar statements made by appellee, are the basis for the contention that the risk was assumed by him. This overlooks, however, the sudden and unexpected lifting of the drum so that the greater part of its weight would suddenly and unexpectedly be shifted upon the appellee, as testified by him, and was sufficient to submit to the jury the question as to whether or not Dean, at the time, was acting with due care for his fellow-servant. The jury

might doubtless have found that, in carrying a drum of the shape and weight of the one in question, those carrying it would be in a strained and unnatural position, and thus be liable to injury from unexpected and sudden movements, and that due care required that no such movements be made.

It is our conclusion that this evidence warranted the conclusion reached by the jury, and, as the amount of the verdict is not questioned, the judgment of the trial court is affirmed.