DIERKS LUMBER & COAL COMPANY *v*. NOLES.

4-6233 148 S. W. 2nd 650

Opinion delivered March 3; 1941.

*Scott Wood, Martin, Wootton & Martin* and *Watson, Ess, Groner, Barnett & Whittaker,* for appellant.

*Leo P. McLaughlin, Curtis L. Ridgway* and *Jay M. Rowland,* for appellee.

SMITH, J. Appellee filed suit in the Garland circuit court against Leonard Aldridge, Arthur Cline, Tom Crawford, Leon Williams, Luther Miles, and the Dierks Lumber & Coal Company, a corporation, to recover damages to compensate an alleged personal injury sustained on June 27, 1939, while employed by the corporate appellant, through the negligence of the individual defendants named, all of whom were at the time employees of the corporation, but the suit was dismissed as to all the employees except Cline and Aldridge.

The jury returned the following verdict: "We, the jury, find in favor of the defendants Arthur Cline and Leonard Aldridge. We, the jury, find in favor of the plaintiff against the defendant Dierks Lumber & Coal Company and fix his damages in the sum of nine thousand and five hundred dollars ($9,500)."

This verdict was reduced by the court to $5,000, and judgment was rendered for that sum, from which the corporation has appealed, and the plaintiff has prosecuted a cross-appeal from the action of the court in reducing the verdict.

For the reversal of the judgment it is insisted by the appellant corporation that inasmuch as its alleged liability arises under the doctrine of *respondeat superior,* and inasmuch as a verdict was returned in favor of the employees for whose negligence it has been held liable, judgment should have been entered in its favor notwithstanding the verdict of the jury.

The answer of the corporation, hereinafter referred to as appellant, denied all allegations of the complaint as to negligence, and further alleged "That the plaintiff's negligence caused or contributed to his injury, if any, . . . , as he was the best judge of his own strength."

Appellee's testimony was to the effect that appellant employed several crews of men to cut timber. The employees assembled each morning at the New Blakely camp, where barrels of drinking water would be loaded into the trucks for consumption while the men cut timber in the woods. Appellee arrived at the camp just as the members of his crew had completed putting water in the barrel, and had just picked the barrel up to load it on the rear end of the truck. Appellee got up in the front end of the truck, and walked to the rear end thereof to assist Aldridge in lifting the barrel into the truck.

There was testimony to the effect that each crew filled its own barrel with water, and that the custom was to first place 10 or 15 gallons of water in the barrel and load it with that quantity of water into the truck, and thereafter to finish filling the barrel by using buckets in which water was carried from the pump to the barrel. The barrels held about 50 gallons, and had iron handles just below the middle. There were lids for the barrels, which were fastened down and sealed with a rubber washer when full so that the water would not splash out while it was being transported into the woods.

On the morning of appellee's alleged injury no buckets were available, and the barrels were filled before they were placed in the truck, and as the lids had been placed in position it could not be seen that the barrels were full of water. Aldridge stood on one side of the truck, and appellee was on the other to receive the barrel when it was placed in the truck. Appellee reached down and seized one of the handles on the barrel, while Aldridge took the handle on the other side. The men on the ground lifted the barrel of water up to the truck, but released it when Aldridge and appellee seized the handles. This threw the weight of the entire barrel on appellee and

Aldridge, and the latter gave the barrel a quick jerk, which threw the entire weight of the barrel on appellee. The testimony on appellee's behalf is to the effect that this act of Aldridge threw the great weight unexpectedly upon appellee, causing him to wrench his back and produce an inguinal hernia.

It is undisputed that appellee has a hernia, but the testimony is conflicting as to its cause. Experts testified on both sides of the question, and the conflicting opinions usually appearing in such cases is present here. Upon this issue the testimony on appellee's behalf is to the effect that he sustained, not only a hernia, but a painful and permanent injury to his back from which he has suffered and now suffers greatly, and that he has since been unable to do manual labor or to obtain employment which he can perform, even as a WPA worker.

We think the case of *Border Queen Kitchen Cabinet Co.* v. *Gray,* 189 Ark. 1137, 76 S. W. 2d 305, affords authority for saying that the testimony above recited made a question for the jury whether appellee's injury was the result of the negligence of his fellow-servants, and we are of opinion that the testimony is sufficient to sustain the verdict rendered by the jury.

The serious and difficult question in the case is whether the judgment against the appellant, master, may be affirmed in view of the verdict in favor of the servants whose negligence caused the injury. We are constrained, upon the authority of the case of *Mississippi River Fuel Corp.* v. *Senn,* 184 Ark. 554, 43 S. W. 2d 255, to hold that it may and must be. In that case, as in this, a master was held liable for the negligence of servants in whose favor a verdict was returned. In that case, as in this, there was an allegation that the injured servant was guilty of contributory negligence, and the question was there raised, as it is here, whether the question of contributory negligence should have been submitted to the jury under the testimony in the case.

The only negligence with which appellee could be charged, contributing to his injury, was that he had misjudged his strength, as alleged in the answer. Now, for

reasons presently to be stated, contributory negligence was not a defense available to the corporation, but it was a defense available to Cline and Aldridge. This is the distinction drawn in the Senn case, *supra,* upon very similar facts, and was the theory upon which the judgment was affirmed which was rendered upon the verdict exonerating the servants, but holding the master liable. We are unable to distinguish this case from that one.

By § 9130, Pope's Digest, it is provided that "Every corporation, except while engaged in interstate commerce, shall be liable in damages to any person suffering injury while he is employed by such corporation, . . . resulting in whole or in part from negligence (of such corporation or from the negligence) of any of the officers, agents or employees of such corporation."

And by § 9131, Pope's Digest, which is a part of the act of which § 9130 is also a part, it is provided that "In all actions hereafter brought against any such corporation under or by virtue of any of the provisions of this act to recover damages for personal injuries, . . ., the fact that the employe may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury (and not by the court) in proportion to the amount of negligence attributable to such employe; . . ."

It was held in the case of *Athletic Mining & Smelting Co.* v. *Sharp,* 135 Ark. 330, 205 S. W. 695, that the defense of contributory negligence is eliminated from all actions by employees for personal injuries received while employed by corporations not engaged in interstate commerce. It may happen, therefore, as in the Senn case, *supra,* that the master may be held liable for an injury occasioned by the negligence of a servant who was exonerated by the jury from liability.

It is insisted that this statute does not apply here because the appellant is subject to the National Labor Relations Act, 29 USCA 151, *et seq.,* the Fair Labor Standards Act, and other like federal statutes, and to sustain that contention such cases as *Santa Cruz Fruit Packing Co.* v. *National Labor Relations Board,* 303 U. S.

453, 58 S. Ct. 656, 82 L. Ed. 954; *Consolidated Edison Co.* v. *National Labor Relations Board*, 305 U. S. 197, 59 S. Ct. 206, 83 L. Ed. 126; *National Labor Relations Board* v. *Jones & Laughlin Steel Corp.*, 301 U. S. 1, 57 S. Ct. 615, 81 L. Ed. 893, 108 A. L. R. 1352, and *National Labor Relations Board* v. *Fruehauf Trailer Co.*, 301 U. S. 49, 57 S. Ct. 642, 81 L. Ed. 918, 108 A. L. R. 1352, are cited.

It is no doubt true that under the cases just cited appellant is subject to the regulation and control of the statutes there construed, because there exists "a close and intimate relation between (petitioner's) appellant's operations and the flow of commerce," a quotation from the cases cited.

But those federal statutes have no application or relation to the facts in the instant case. Appellee was not engaged in interstate commerce at the time of his injury within the meaning of §§ 9130 and 9131, Pope's Digest, *supra*. The service in which appellee engaged was to load the barrel of water into a truck, to be carried into the woods and there consumed by employees who were engaged in cutting timber, which, when hauled to the mill, would be manufactured into lumber, portions of which would be shipped in interstate commerce. The federal cases are very liberal and have gone quite far in holding injured employees to have been engaged in interstate commerce, but none have been called to our attention which have gone to the extent of applying that holding to facts similar to those of the instant case.

Appellant is subject to the Wagner and similar acts, because a considerable portion of its final product will be shipped in interstate commerce, but in its relation to appellee at the time of his injury, it was not engaged in interstate commerce. Had appellee been engaged in loading lumber on a car for shipment in interstate commerce, or other similar service, a different question would be presented.

It is insisted that the judgment, notwithstanding the reduction of $4,500 which the court made, is still excessive. It does, even yet, appear to be very liberal, but

we are unable to say that it is so excessive that a further reduction must be ordered.

Appellee has prayed a cross-appeal from the action of the court in reducing the verdict from $9,500 to $5,000, for the reason that appellant failed to comply with the provisions of § 1538, Pope's Digest. By this section it is provided "that the circuit judge presiding at the trial may on motion for a new trial filed by the losing party, if he deems the verdict excessive, indicate the amount of such excess, and thereupon, if the losing party shall offer to file and enter of record a release of all errors that may have accrued at the trial if the prevailing party will remit the amount so deemed excessive, and the prevailing party shall refuse to remit the same, the verdict shall be set aside."

It was held in the case of *St. Louis & North Arkansas Rd. Co.* v. *Mathis,* 76 Ark. 184, 91 S. W. 763, 113 Am. St. Rep. 85, that the act of April 25, 1901 (Acts 1901, p. 196), which appears as § 1538, Pope's Digest, was void in so far as it curtailed the appellate jurisdiction of the Supreme Court.

In the case of *S. & C. Transport Co.* v. *Barnes,* 191 Ark. 205, 85 S. W. 2d 721, it was said: "Inherently courts of record have the power to reduce jury awards to conform to the established facts as is established by our repeated actions in this regard." The Mathis case, *supra,* and numerous other cases were cited to sustain this statement of the law as to the power of trial courts in regard to verdicts thought to be excessive.

Upon the whole case we find no error, and the judgment must be affirmed, and it is so ordered.

GRIFFIN SMITH, CJ., and HOLT, J., dissent.