Louis B. SIEGEL & COMPANY, INC. *v.* MOORE.

4-6637                                          161 S. W. 2d 387

Opinion delivered April 13, 1942.

Owens, Ehrman & McHaney, Downie & Downie and Sam M. Levine, for appellant.

Frank Pace, Jr., and Henry E. Spitzberg, for appellee.

GRIFFIN SMITH, C. J.   The action was to compensate personal injuries sustained by appellee, a Siegel employe.  A stationary block with blade formed one of two surfaces to which scrap metal was fed.  Cutting occurred when a second blade, power-driven and operating scissors-like, contacted the object intended to be reduced.  Brittle particles were frequently broken from metal.  These would sometimes be projected with considerable force in an uncontrolled manner.

While "feeding" the machine May 21, 1940, a steel sliver struck appellee, entering the right forearm and inflicting permanent injury.  Of sixteen errors alleged in the motion for a new trial, six are urged:  (1) Appellant assumed the risk.  (2) Judgment *non obstante veredicto* should have been rendered.  (3) Instruction No. 1 omits the defense of assumed risk, and (4) is otherwise erroneous, as (5) is also plaintiff's instruction No. 8.  (6) Defendant's instruction No. 8 should have been given.

The day of injury both cutting edges of the machine were dull.  Appellee alleged this caused particles to break from the metal.  When blades were sharp, slivers would seldom be impelled unless hard steel was cut.

The morning of May 21 appellee asked Cooper Harris, his foreman, to change blades, explaining that those

in use were dull, and he was afraid to use them in that condition. Harris said time was not then available. He directed appellee to finish cutting a certain quantity of steel, and promised, thereafter, to make substitutions. Appellee testified he relied on the promise, but was injured during the afternoon while cutting a bumper that came from a very old automobile. At the hospital a general anaesthetic was administered and the sliver removed. Part of the flesh sloughed off. A physician testified that while appellee still had partial use of the arm, amputation would probably be necessary. The judgment for $10,000 is not alleged to be excessive.

The foreman denied having promised to replace blades, but admitted appellee complained of their condition the morning of May 21. Sharp blades, he said, "sliver" certain kinds of metal, and particles are apt to strike an operator at any time.

*First.*—It is insisted that because appellee was 47 years of age, and had been using the machine several years, his information regarding it, and knowledge of attendant dangers, were equal to information and knowledge of the foreman. Appellee's statement that slivers from hard steel were sometimes thrown from sharp blades is, it is argued, an admission that the danger was obvious; therefore, a promise to repair and failure to do so were not proximate causes of injury; and this, it is said, is certainly true in view of appellee's testimony that hard steel of the kind he was converting "would shatter like a piece of glass."

An experienced employe assumes all ordinary risks incident to his employment. *McEachin* v. *Yarborough,* 189 Ark. 434, 74 S. W. 2d 228; *Southwestern Telephone Company* v. *Woughter,* 56 Ark. 206, 19 S. W. 575. The McEachin decision is cited by appellant, and its rule is sought to be invoked. Distinction is that a promise on behalf of McEachin to repair was not involved, while here appellee says he relied absolutely upon the foreman's assurance. In this respect the case is dissimilar to *M. E. Gillioz, Inc.* v. *Lancaster,* 195 Ark. 688, 113 S. W. 2d 709. It is more like *Texarkana Telephone Company*

v. *Pemberton,* 86 Ark. 329, 111 S. W. 257, where we said that when a master has promised to repair, the employe does not assume interim risks if the period is reasonable and circumstances do not preclude normal expectation the promise will be kept.

Notice given an employer, and the employer's promise to repair, were bases upon which cases cited here by appellant were distinguished in *Roach* v. *Haynes,* 189 Ark. 399, 72 S. W. 2d 532. Mr. Justice BUTLER expressed the court's view that although the employe be skilled in operation of the appliance being handled, and knew of defects, and had an appreciation of danger incident to vices, the master's promise to repair created a new relationship, effect of which was to remove the assumption of risk, within the limitations drawn. The rule in reverse was expressed in *St. Louis, I. M. & S. Ry. Co.* v. *Holman,* 90 Ark. 555, 120 S. W. 146. Mr. Justice WOOD there said that a promise by the master to repair, and the servant's continuance in service in reliance upon the assurance "[creates] a new stipulation whereby the master assumes the risk impendent during the time specified for the repairs to be made." See *Reader Railroad* v. *Sanders,* 192 Ark. 28, 90 S. W. 2d 762.

*Second.*—Harris, the foreman, was sued jointly with the Siegel company. Judgment was neither for nor against him, no verdict having been signed except the one finding against appellant. The new relationship grew out of the foreman's instructions; but, necessarily, appellee's work had to be done with a machine he thought was dangerous. Harris' position and his authority were, in law, such as to justify appellee in remaining at his post unless the danger was so apparent no reasonable person would have done so. This was not the case; nor do we think there is want of substantial evidence to sustain the presumption that Harris had authority to direct appellee.

In *Mississippi River Fuel Corp.* v. *Senn,* 184 Ark. 554, 43 S. W. 2d 255, there was a finding in favor of the appellee, an injured employe. The act of negligence causing injury was by Hudgins, a fellow-servant, whom

the jury found blameless. In the opinion (as to which there were dissents by Mr. Justice FRANK G. SMITH and Mr. Justice McHANEY) it was held that the verdict in favor of Hudgins was not inharmonious with a finding against the fuel corporation: this because the appellee might recover from the corporation notwithstanding his own contributory negligence, but could not prevail against the fellow-servant, ". . . no matter how guilty [the fellow-servant] might have been of negligence, if the injured party was guilty of contributory negligence." By this decision the comparative negligence doctrine (applicable to a corporation as distinguished from an individual) permits recovery against the artificial entity in circumstances where no claim could be sustained against a natural person. See *Dierks Lumber & Coal Co.* v. *Noles,* 201 Ark. 1088, 148 S. W. 2d 650.

*Third.*—Was assumption of risk as a defense submitted to the jury? By instruction No. 1 there was direction to find for the plaintiff (1) if the blades had become dull; (2) if that fact, being known to appellee, was by him brought to the foreman's attention, coupled with a request for replacements; (3) if Harris promised to repair and requested appellee to continue work; (4) if by reason of such defects appellee sustained the injury complained of ". . . within a short period of time after Harris had promised to repair the defects, if any," and if the hurt occurred while appellee was exercising due care and was properly performing his duty. Final condition was that the injury must have been ". . . directly caused by the dull condition of the cutting blades." *Long Bell Lumber Co.* v. *Tarver,* 196 Ark. 275, 118 S. W. 2d 282, and cases cited in these reports. Instruction No. 1 was "binding." *Missouri Pacific Railroad Co.* v. *Dalby,* 199 Ark. 49, 132 S. W. 2d 646. A "binding" instruction, if inherently wrong, is not cured by a correct instruction.

To repeat, the only negligence relied on is that the blades were dull. No contributory negligence is testified to other than appellee's act in continuing to work after he had requested repairs. The foreman's directions, as

in *Railway* v. *Holman,* created a new relationship. The instruction, therefore, was not erroneous.

*Fourth.*—Instruction No. 7 told the jury appellee did not assume risks arising from negligence the defendant may have been guilty of, ". . . unless he knew of and appreciated the dangers arising therefrom." Insistence is that there is absence of evidence that appellee did not understand the dangers. Again, the answer is that with creation of the new relationship, risks due to dull blades during the reasonable period operations continued were, in a sense, underwritten by appellant.

If it be conceded appellee knew of and appreciated gravity of the danger, reply is that he told Harris the machine was unsafe. From then until the so-called reasonable period expired, appellee acted in reliance upon the foreman's implied assurance, and any injury resulting from dull blades became appellant's liability while the work was being done as usual. Since there is no testimony appellee altered his conduct or varied his methods after promise, objection to the instruction cannot be sustained.

*Fifth.*—What has been said in respect of the law's presumption that a new relationship arises when there is complaint of defects and promise to repair, is applicable to plaintiff's instruction No. 8. It told the jury that if Siegel's foreman asked appellee to continue work, ". . . the defendant assumed the risk of injury during the time specified for making repairs." There was the added admonition: ". . . unless you further find . . . that the dangers were so open, obvious, and apparent, that no ordinarily prudent person would have continued [at work], notwithstanding the assurance of his foreman."

*Sixth.*—Defendant's instruction No. 8 (refused) would have told the jury appellant was only required to use ordinary care to prevent injury; that the foreman ". . . should have foreseen an injury would be the natural and probable result or consequence of the alleged negligence."

Appellee's instruction No. 4 declared the law to be that plaintiff's burden was to prove the defendants were guilty of negligence when Harris directed continuance of work, if it should be found as a matter of fact that the blades were dull. We think it was the jury's duty to determine whether Harris (after receiving the essential information from appellee) was negligent in directing continued use of the machine. The foreman's ability to foresee that an injury "would" be the result of failure to make repairs is not a correct statement. To have foreseen that an injury *would* occur is one thing; to have apprehended it *might* occur is another. Hence, it was not error to refuse defendant's instruction No. 8.

Affirmed.