Allen WILLIAMS and Chris WILLIAMS *v.* CHARLES SLOAN, INC. and Charles SLOAN, Individually

CA 85-392                                      706 S.W.2d 405

Court of Appeals of Arkansas
Division I
Opinion delivered April 9, 1986

248

*Quiggle & Thompson*, by: *John C. Wisner, III*, for appellants.

*Rowland & Templeton*, by: *Randell Templeton*, for appellees.

DONALD L. CORBIN, Judge. This case involves an appeal of a judgment notwithstanding the verdict or a judgment n.o.v. Appellants, Allen and Chris Williams, brought suit against appellees, Charles Sloan, Inc. and Charles Sloan, individually, for breach of contract. Appellants sought $92,000 for breach of express and implied warranties, $15,000 damages for misrepresentations, and $50,000 punitive damages. The case went to a jury which found in favor of appellants and awarded them $28,000. Appellees submitted a motion for a judgment n.o.v. arguing that there was no substantial evidence of the proper measure of damages. The motion was granted by the court on the ground that there was not substantial evidence to support the jury's verdict. Appellants appeal the judgment n.o.v. and assert that the jury's verdict was supported by substantial evidence. We reverse and remand.

Appellants entered into a contract with appellees for the sale of a new house. The house was to be constructed by appellees and completed by December of 1977. The house was not ready for occupancy at that time. Appellants, in reliance on appellees' representations, had informed their landlord that they would be moving out of their home. Although construction was not completed, appellants moved into the house sometime around the end of December. Before the sale of the house was closed,

appellants made a list of defects which they wanted appellees to fix and appellee signed this list at the time of the closing. In October of 1979 appellants filed this suit against appellees alleging that the listed defects and other latent defects had not been corrected by appellees.

Appellants presented testimony indicating that there were numerous defects in the construction of the house. Appellants testified that, among other things, the foundation was "wavy", there were hills and valleys in the floors, the walls and ceiling were cracking in places, the cabinets in the kitchen were coming off the walls, and there were cracks in the porch and driveway. The only evidence that appellant presented as to actual damages was the testimony of an appraiser who said that, in 1978, the difference in market value of the house as constructed with defects and the house as contracted for was $6,500. The appraiser also testified that it would cost more than $6,500 to repair the defects in the house. Specifically, James T. Johnson, the appraiser testified as follows: "I estimated that the house was worth $6,500 less than its fair market value in 1978. But I am not of the opinion that plaintiffs (appellants here) could spend $6,500 on the house and clear up the defects." The appraiser testified that the difference in market value at the time of trial was $8,150. This was the only evidence presented by appellants pertaining to actual damages. Appellees presented no evidence on the cost of repairing the defects nor on the difference in market value.

■ There are two methods of determining damages where the breach of a construction contract results in incomplete or defective construction. The Restatement (Second) of Contracts, § 348(2) (1979), defines these methods as follows:

§ 348. Alternatives to Loss in Value of Performance

. . . .

(2) If a breach results in defective or unfinished construction and the loss in value to the injured party is not proved with sufficient certainty, he may recover damages based on

(a) the diminution in the market price of the property caused by the breach, or

(b) the reasonable cost of completing performance or

of remedying the defects if that cost is not clearly disproportionate to the probable loss in value to him.

■ There are cases which indicate that the preferred measure of damages in breach of construction contract cases is cost of repairs, except in those cases where cost of repairs is unreasonable. The classic case is *Jacob & Youngs, Inc.* v. *Kent,* 230 N.Y. 239, 129 N.E. 889 (1921). There the buyer requested "Reading" pipe and another brand of pipe was used in the building. The court found that it would be unreasonable to tear down the building to install "Reading" pipe when the pipe used was of comparable quality. In that case the court allowed the difference in market value measure of damages.

The question in this case is whether the judgment n.o.v. can stand on the basis that appellants failed to present evidence of actual estimates of the cost of repairs. We find that the judgment n.o.v. cannot stand on that basis.

■ Appellees are arguing that appellants should not be permitted to recover damages computed by the difference in market value measure because appellants did not put on testimony estimating the exact cost of repairing the defects. However, we find that the courts' preference for the cost of repairs measure and the economic waste exception are devices to avoid the situation where the contractor is required to tear down a structure, or otherwise commit economic waste, to correct a defect that does not detract from the market value as much as it would cost to repair it. The preference for the cost of repairs measure and the exception do not limit the injured buyer to only one measure of damages. The court would be correct in applying the cost of repairs measure to determine the damages where the injured buyer asserts damages based on the difference in market value and the contractor presents evidence that the cost of repairing the defects would be less than the difference in market value. This was not done in the case at bar. In this case the injured buyers, appellants, presented evidence that the contract had been breached, that they had suffered damages as a result of that breach, and asserted, through the appraiser's testimony, that it would cost more to repair the defects than it would cost to compensate them for the difference in market value of the house as contracted for and with defects. Appellees did not present

evidence at the trial that cost of repairs was the correct measure of damages. Instead, appellees moved for a judgment n.o.v. following the presentation of evidence on the grounds that the proper measure of damages had not been used. Appellants presented evidence that the contract had been breached and utilized the difference in market value method of assessing the damages suffered because of the breach. If appellees believed that the difference in market value was not the proper measure of damages they had an opportunity to present evidence of cost of repairs. Appellees did not present evidence that appellants were not correct in their assertion that the difference in market value was the correct measure of damages in this case. Therefore, we find that appellees were not entitled to a judgment notwithstanding the verdict.

The jury awarded appellants damages of $28,000. We find that this amount was not supported by the evidence. The evidence presented at trial supported an award of $6,500, which is the difference in the market value in 1978, the time of the breach, between the house as constructed with defects and the house constructed in accordance with the contract. Implicit in ARCP Rule 59 is the trial court's power to order a new trial where the damages are excessive, unless the party in whose favor the damages were awarded agrees and consents to a remittitur. While this power is not specifically expressed in the rule, the court has this inherent authority. *Dierks Lumber & Coal Co.* v. *Noles*, 201 Ark. 1088, 148 S.W.2d 650 (1941).

For the reasons stated above we reverse the trial court's judgment n.o.v. and remand with instructions to reduce the jury's verdict to conform to the evidence, if appellants agree. If appellants do not agree to a remittitur we remand for a new trial.

Reversed and remanded.

CRACRAFT, C.J., and CLONINGER, J., agree.