Loretta VALDEZ *v.* Richard LIPPARD

CA 00-516                                    39 S.W.3d 804

Court of Appeals of Arkansas
Division IV
Opinion delivered April 4, 2001

*Oscar Stilley*, for appellant.

*Witt Law Firm, P.C.*, by: *Ernie Witt*, for appellee.

ANDREE LAYTON ROAF, Judge. Loretta Valdez appeals from an order of the Scott County Circuit Court granting a remittitur in favor of her former attorney, Richard Lippard, that reduced her jury verdict in a breach-of-contract case against Lippard from $32,000 to $3,972.50, plus $1,500 in attorney fees. She also challenges the trial court's refusal to give her proffered jury instruction on punitive damages. Regarding the remittitur, Valdez argues that the trial court erred in granting it because she was entitled to compensatory damages for disruption of her life, "serious anxiety," and mental distress. As to the jury instruction, she asserts that her proof that Lippard repeatedly claimed to have obtained a custody hearing for her when he had in fact never entered an appearance, warranted a punitive-damages instruction. We affirm the first point and hold that Valdez's acceptance of the remitted judgment bars consideration of the second point.

It is undisputed that Lippard defended Valdez when she was extradited from New Mexico to Scott County in January of 1997 after she failed to appear for a Class D felony interference with custody charge. It is also undisputed that after posting a $5,000 cash bond, Valdez paid Lippard, who is also a public defender, a $2,500 retainer and that Lippard succeeded in having the charges dismissed shortly after he took Valdez's case. The central issue in this case was, however, whether the retainer was paid to Lippard for his services in the criminal case, as Lippard contends, or whether it was for his services in Valdez's domestic-relations case involving disputed custody and visitation of her three children. While Lippard claims that $2,500 is his minimum fee for representation in a felony case,

Valdez contends that the $2,500 that she paid to Lippard represented a $2,000 retainer for Lippard's services in seeking to regain custody of her children, and $500 for a deposition of Valdez's ex-husband. In July of 1997, Valdez faxed a letter to Lippard, firing him. She sought the return of the $2,500 retainer, and eventually, Lippard refunded $527.25. Valdez subsequently filed suit for the return of the rest of the retainer in small-claims court, but Lippard prevailed. She appealed to circuit court and in her pleadings requested not only the return of the rest of the retainer but other consequential damages, and punitive damages as well.

At trial, Valdez testified that she lost custody of her children in 1995 by default judgment in Texas after she failed to attend a hearing. Valdez subsequently picked up her children and took them to her residence in New Mexico, where she obtained an *ex parte* order giving her temporary custody. However, Valdez never succeeded in bringing the matter to a final hearing on the merits, and her case was dismissed in November or December of 1996.

Meanwhile, Valdez's ex-husband had filed a case in Arkansas, and by January 1997, Valdez, who had moved to Michigan, learned that a Governor's Warrant had been filed in Arkansas seeking her extradition. According to Valdez, she went to see Lippard on January 30, 1997, having been told that he was the public defender. She claimed that he made one phone call that day and the charges were dropped the next day. Valdez claimed that she gave Lippard the retainer after the charges had been dismissed and it was solely for his services in her domestic case. She claimed, however, that he did nothing for her, despite the fact that she called him twenty-nine times. She alleged that Lippard told her that he had hearings set for March 13, April 13, May 10, May 22, and June 12, but in truth, Lippard had not even filed an appearance. Regarding the June 12 hearing, Valdez stated that when she arrived for the hearing with her mother, Lippard told her that it was "next week," and at that point, she decided to fire him. Her new counsel succeeded in getting a custody hearing in December of 1997, however, she was unsuccessful in regaining custody. Her appeal of that decision was also unsuccessful. Valdez did, however, admit that she exercised visitation with her children during spring break in 1997, which was before she fired Lippard.

Valdez claimed that she suffered emotionally from the "false promises" that Lippard had made. She opined that if Lippard had "done what he promised he would do," she would have gotten her children back two-and-a-half years ago. According to Valdez, she

had been required to pay child support since December 1997. She asserted that Lippard was responsible for her having to make the 2,200-mile round trip from Michigan to Arkansas five times, and as a result, incurred $2,000 in travel expenses. On cross-examination, Valdez admitted that she had initially attempted in small claims court to secure a refund of part of the retainer that she gave to Lippard, but was unsuccessful. She emphatically denied that the retainer was for the criminal case, and "assumed" that Lippard represented her free of charge in that matter because he was the public defender.

Lippard was called' in Valdez's case-in-chief and testified that the $2,500 retainer was for Valdez's criminal case and did not recall making an agreement to represent her in her domestic case. According to Lippard, he did not charge for representation in criminal matters on an hourly basis and that the $2,500 retainer was "completely consumed" by his efforts to get the charges dismissed. However, he admitted that because he was able to settle her criminal matter without a trial, he agreed to allocate $1,500 of the $2,500 to the criminal case and charge her $110 an hour for his work on the domestic case. Lippard stated that his work in the domestic case consisted of making several phone calls to the attorney representing Valdez's ex-husband and to the judge in an effort to secure for Valdez the visitation that she was awarded under the Texas custody order. Lippard claimed that after he was discharged by Valdez, he refunded approximately $500 just to "satisfy" her. Lippard testified that he never filed anything for Valdez because he felt certain that the chancellor would not entertain a motion to change custody, as he had just vested custody with Valdez's ex-husband pursuant to the Texas decree.

Valdez concluded her case with the testimony of her mother, Nancy Rodriquez. Rodriquez testified that the $2,500 retainer, which she provided out of a recent inheritance, was strictly for the domestic-relations case. She corroborated Valdez's claim that $2,000 was for legal services and $500 was to take a deposition of Valdez's ex-husband.

In Lippard's case, he presented the testimony of municipal court judge Donald Goodner, who recalled that Valdez had testified in her small-claims court case that the $2,500 retainer was for the criminal case. He stated that in his written decision in the small-claims court case, he noted that Valdez had admitted that additional fees would be charged by Lippard in the civil case.

The jury returned a general verdict in the amount of $32,000. Lippard filed a notice of appeal and a motion for remittitur. The latter was granted, and the trial judge lowered the award to the balance of the retainer that Valdez gave to Lippard, plus $2,000 in travel expenses, and a $1,500 attorney fee. Valdez then filed a notice of appeal. Lippard subsequently paid the judgment, however, Valdez filed a document, prepared and signed by her attorney, entitled "Limited Satisfaction of Judgment (As to Amount Covered by Remittitur Only)," asserting that acceptance of that payment did not impair her right to appeal.

Valdez argues that the trial court erred in granting remittitur of damages, when the proof showed that she suffered a serious disruption of her life, and serious anxiety and mental distress, as a result of breaches of contract and misrepresentations made by Lippard, a licensed attorney. Valdez asserts that Lippard can point to no evidence, appropriately objected to, which would be likely to inflame the passion and prejudice of the jury or that the award shocks the conscience of the court. She contends that the six months' delay that she suffered as a result of Lippard's "inaction" was "extremely costly" to her, because the time for appealing the January 10, 1997, custody award ran out with no action taken. Valdez argues that a reasonable jury could have found that she lost "substantial rights involving her children and that she suffered "much anguish of soul and interruption of her normal routine of life" because of Lippard's lies and inaction. She concedes that she subsequently lost her case and her subsequent appeal to this court, but asserts that "in all probability," if Lippard had acted promptly after making his contract, the January 10, 1997, order would have been set aside due to the lack of a hearing, and at a hearing she could have set forth her claims as to custody. Valdez argues that unless this court reinstates the original verdict, then we are creating a "special privilege" for lawyers that exempts them from the consequential damages flowing from their misrepresentations. This argument is not persuasive.

Remittitur is within the inherent power of the court if an award is grossly excessive or appears to be the result of passion or prejudice. *See McNair v. McNair*, 316 Ark. 299, 870 S.W.2d 756 (1994). Remittitur is appropriate when the compensatory damages awarded cannot be sustained by the evidence. *United Ins. Co. of Am. v. Murphy,* 331 Ark. 364, 961 S.W.2d 752 (1998); *Johnson v. Gilliland,* 320 Ark. 1, 896 S.W.2d 856 (1995). We review the issue of remittitur *de novo. Smith v. Hansen,* 323 Ark. 188, 914 S.W.2d 285 (1996).

██ ██ Valdez has predicated her argument on the assertion that had Lippard acted with diligence, she would have been awarded custody of her children in January of 1997. In fact, when she did obtain a hearing, she lost both at the trial-court level and on appeal. While it is true that she stated that she believed that she would have regained custody of her children, in light of her subsequent failure in court and on appeal, this amounts to speculation. Speculation does not constitute substantial evidence to support a jury verdict. *See Farmers & Merchants Bank v. Deason,* 25 Ark. App. 152, 25 Ark. App. 152 (1988). Additionally, while it is also true that she claimed to have suffered some emotional distress, her domestic-relations problems predated her association with Lippard by several years and obviously continued after she discharged him. In the order granting the remittitur, the trial judge stated:

> In reviewing the facts of the case and applying the law applicable in this matter, there is no substantial basis for the amount of the judgment awarded by the jury and feels an Order of Remittitur should be entered. The Court makes this finding based on the facts this was an action brought in a contract for the return of a $2,500,00 retainer. There were collateral issues concerning the Plaintiff's loss of her children in a separate Chancery proceeding. The Plaintiff was emotional in describing the impact on losing her children and the Court feels this could have influenced the decision by the jury. The Court finds that the only damages that were substantially proven were for $2,000.00 in travel expenses and the balance of the retainer of $1,972.50, for a total of $3,972.50. The Court finds the Plaintiff should be awarded her attorney fees and costs and awards a reasonable attorney fee of $1,500.00.

We agree with the trial court that the jury's award of $32,000 compensatory damages cannot be sustained by the evidence.

██ Valdez also argues that the trial judge erred in refusing to give her proffered jury instruction on punitive damages. This argument is apparently posed as a contingent one in that Valdez states that "if she can recover back the full amount of the judgment, she seeks no more. However, if this Court decides that remittitur was proper, she would respectfully request a remand for trial to determine punitive damages." However, we hold that by accepting the remitted judgment, Valdez is barred from raising this issue on appeal.

██ In *Wilson v. Fullerton,* 332 Ark. 111, 964 S.W.2d 208 (1998), the supreme court stated two well-settled rules that directly

bear on this case: "acceptance of an amount less than appellant contends is due him is an estoppel against an appeal when seeking to gain more by the appeal, he risks a smaller recovery on reversal," and "acceptance of benefits of a decree or judgment which are inconsistent with the relief sought on appeal, and detrimental to the rights of others, bars the appeal and requires dismissal." Were we to find merit in Valdez's argument that the trial court erred in refusing to give her punitive-damages instruction, relief would come in the form a new trial, at which the issue of damages would necessarily be considered anew. Accordingly, it would be a situation where Valdez's award of remitted damages would necessarily be at risk, so the appeal of this issue must be dismissed. *Wilson v. Fullerton, supra.*

Affirmed in part; dismissed in part.

ROBBINS and BIRD, JJ., agree.