Kenneth GRAVES *v.* Billy Paul BULLOCK, Individually and
d/b/a Bullock Flying Service, and David Paul Bullock

CA 07-752                                              283 S.W.3d 615

Court of Appeals of Arkansas
Opinion delivered April 30, 2008

*Claude W. Jenkins*; and *Boyd & Buie*, by: *Rufus T. Buie* and *Christina Boyd*, for appellant.

*Russell D. Berry*, for appellees.

DAVID M. GLOVER, Judge. Appellant, Kenneth Graves, hired appellees, Billy Paul Bullock, individually and d/b/a Bullock Flying Service, and David Paul Bullock, to distribute, by air, his wheat seed and fertilizer over ninety acres of his farmland. Appellant alleged, and the jury agreed, that appellees converted appellant's seed for their own uses. The jury awarded appellant $5,715.80 in compensatory damages and $25,000 in punitive damages, for which judgment was entered on November 14, 2006. The Bullocks timely filed a motion for judgment notwithstanding the verdict, or in the alternative, for remittitur of the damages. The trial court denied the motion for JNOV, but granted the request for remittitur. The trial court reduced the amount of compensatory damages to $912. The trial court also reduced the amount of punitive damages to $4500, which approximated the ratio between the original compensatory- and punitive-damage awards. In this appeal from the grant of remittitur, appellant contends that the trial court erred in reducing the amounts of compensatory and punitive damages awarded by the jury. Appellees do not cross-appeal the trial court's denial of their motion for JNOV. We affirm the trial court's reduction of both damage awards; however, in so doing, while we affirm the amount of compensatory damages calculated by the trial court, we increase the amount of punitive damages calculated by it from $4500 to $8000.

Only a brief recitation of the facts is necessary to understand the issues presented in this appeal. Appellant is a farmer in Arkansas County. In November 2002, he hired appellees to apply fertilizer and wheat seed by aerial application to a ninety-acre field. Over three-hundred bushels of wheat seed were delivered to appellees for this application. The wheat stand on this field turned out to be

very thin, and a representative of the cooperative-extension service advised appellant to plow under the field to prepare for another crop.

Appellant requested a copy of the global positioning records from the airplane, which would show a color change in the flight path when the plane's hopper was opened to distribute the seed. Those records revealed that appellee David Bullock, who piloted the plane, left the flight path over appellant's field after the fifth pass and flew immediately to a field that Bullock used for hunting and opened the hopper-gate ten times over almost sixteen acres. Later that day, after a subsequent aerial application over some prison property, he immediately flew over some of appellees' other personal hunting lands and opened the hopper several more times. Upon learning of these divergences, appellant filed his complaint against appellees alleging the tort of conversion.

### Standard of Review

We review the issue of remittitur de novo. *Routh Wrecker Serv., Inc. v. Washington*, 335 Ark. 232, 980 S.W.2d 240 (1998); *Smith v. Hansen*, 323 Ark. 188, 914 S.W.2d 285 (1996); *McNair v. McNair*, 316 Ark. 299, 870 S.W.2d 756 (1994); *Valdez v. Lippard*, 73 Ark. App. 254, 39 S.W.3d 804 (2001). Remittitur can be applied to compensatory damages as well as to punitive damages. *Advocat, Inc. v. Sauer*, 353 Ark. 29, 111 S.W.3d 346 (2003).

### Compensatory Damages

For his first point of appeal, appellant contends that the "trial court erred by granting the Bullocks' motion for remittitur and reducing the *compensatory* damages awarded to Kenneth Graves by the jury because there was substantial evidence supporting the amount, which was not excessive." He contends, that in granting appellees' motion for remittitur, the trial court erred in concluding that there was not substantial evidence to support the jury's award of compensatory damages because it was "in the jury's province to determine whether or not so much of the wheat seed had been diverted from Mr. Graves' field to the Bullocks' hunting lands to result in a crop failure and to make the whole amount of the seed worthless." Stating it another way, appellant argues, "In other words, the conversion of a portion of the seed was tantamount to stealing all of the seed because the whole lot was rendered worthless to Mr. Graves." We find no error in the trial court's reduction of the compensatory damages.

In arguing this point, appellant acknowledges that "the proper measure of damages for conversion of property is the market value of the property at the time and place of the conversion," and that the trial court instructed the jury in this manner. Moreover, the instruction that was ultimately given to the jury merely provided:

> If you find in favor the Plaintiff, Kenneth Graves, on the issue of the conversion of his wheat seed by the Defendants, or either of them, you are instructed that the measure of damages is the fair market value of the personal property which you find was converted by the Defendants at the time and place of the conversion.

The instruction makes no mention of the types of consequential damages that would be "tantamount to stealing all of the seed." While appellant presented arguments to the trial court about pursuing such a theory of the case, this is not the theory that was presented to the jury in the above instruction. The case proceeded to the jury on the conversion claim alone, and the only measure of damages for which the jury was instructed is that set out above.

■ In reducing the amount of compensatory damages, the trial court explained:

> *The measure of damages for conversion is the market value of the property at the time and place of conversion and the jury was instructed accordingly.* The undisputed proof showed that the wheat seed had a value of $11.40 per bushel. The plaintiff bought 333.67 bushels and hired the defendant to seed his land. Therefore, the total value of the seed was $3,803.80. The jury awarded the plaintiff compensatory damages of $5,715.80. From reviewing my trial notes, there was evidence that the cost of the aerial application was $1,912.81. Thus, the jury apparently awarded judgment to the plaintiff for the value of *all* the seed, *plus all the application cost. My recollection is that the bill for the application cost was not admitted to be considered proof of damages, but only for the limited purpose of showing that the plaintiff paid for the application. Therefore, including application cost in the compensatory damages was not supported by the damage instruction which the jury was given.*

I can see how the jury could have concluded based on the evidence that the defendant left the plaintiff's field after the last load with some wheat seed, although there was no substantial evidence of

*exactly how much. However, the proof was undisputed that the maximum capacity of the airplane's hopper was 80 bushels. Thus, giving the plaintiff the benefit of all reasonable inferences, the absolute maximum amount of wheat seed in the plane when it last left the plaintiff's field and went to the defendants' land could not have been more than 80 bushels. At the market value of $11.40, this would amount to $912.*

(Emphasis added.) Based upon the evidence that was presented at trial and the instruction that was given to the jury, we find no error in the trial court's reduction of the compensatory damages to $912.

## Punitive Damages

For his second point of appeal, appellant contends that "the trial court erred by granting the Bullocks' motion for remittitur and reducing the *punitive* damages awarded to Kenneth Graves by the jury because there was substantial evidence supporting the amount, which was not excessive." We agree with the trial court's reduction of the punitive-damages amount awarded by the jury, but we have concluded that it was reduced too much. Consequently, for the reasons discussed below, we have increased the punitive-damage award from the $4500 calculated by the trial court to $8000.

In reducing the punitive-damages award, the trial court reasoned: "From the manner in which the jury apparently determined the compensatory damages, I believe that amount of the punitive damage award might have been affected. Based on the reduction of the compensatory damages, and *approximating the ratio of punitive damages to compensatory damages as determined from the jury's verdict, I conclude that the punitive damages should be reduced to $4,500.*" (Emphasis added.) The ratio between compensatory and punitive in the original awards was 4.37 to 1. The ratio between the reduced awards was 4.93 to 1.

Under the facts of this case, appellant's contention is that the trial court erred in *reducing* the $25,000 amount because it was *not* excessive, even considering the reduced compensatory-damages award. Appellant also contends that in comparing the compensatory-damages award to the punitive-damages award, the court is not bound to any particular ratio, and that the fact that the trial court reduced the compensatory award does not mean that the punitive award must also be reduced. He further contends that the ratio factor serves only as a guide in determining excessiveness and that the particular circumstances of each case still prevail. He

argues that even if the trial court was correct in reducing the compensatory-damages amount, appellant still suffered greatly from the conversion and the Bullocks should be deterred from future comparable conduct.

The trial court was presented with arguments encompassing both a state-law and a due-process analysis. As our supreme court explained in *Routh Wrecker Serv., Inc., supra,* "State appellate courts that have considered the punitive-damages issue in light of *Gore* [*BMW of North America, Inc. v. Gore,* 517 U.S. 559 (1996)], have adopted a two-step analysis. The first step is to determine whether the award of punitive damages is excessive under state law; the next is to consider the award in light of the due-process analysis in *Gore.*" 335 Ark. at 240, 980 S.W.3d at 244. Therefore, in our required *de novo* review of the remittitur, we first consider appellant's challenge under state law.

### a. State Law Analysis

When considering the issue of punitive damages under our state law, we consider the extent and enormity of the wrong, the intent of the party committing the wrong, all the circumstances, and the financial and social condition and standing of the erring party. *Routh Wrecker Serv., Inc., supra.* Punitive damages are a penalty for conduct that is malicious or perpetrated with the deliberate intent to injure another. *Id.* When punitive damages are alleged to be excessive, we review the proof and all reasonable inferences in the light most favorable to the appellees,[1] and we determine whether the verdict is so great as to shock the conscience of this court or to demonstrate passion or prejudice on the part of the trier of fact. *Id.* It is important that the punitive damages be sufficient to deter others from comparable conduct in the future. *Id.*

Viewing the evidence that was presented to the jury in the light most favorable to Mr. Graves, it is clear that the jury concluded that appellees intentionally exercised dominion and control over Mr. Graves's wheat seed, and that in doing so their hunting lands were thereby benefited. Thus, in considering the intent of the party committing the wrong, *i.e.,* Mr. David Bullock,

---

[1] Because this is an appeal from the trial court's reduction of the damages that were awarded to the appellant by the jury, and because remittitur is a *de novo* review, we review the proof and all reasonable inferences in the light most favorable to the party to whom damages were awarded. In this case, that is the appellant.

we conclude that this consideration weighs in favor of the punitive damages that were awarded by the jury. However, in considering the remaining factors, i.e., the extent and enormity of the wrong and the financial and social condition and standing of the erring party, even viewing the evidence in the light most favorable to Mr. Graves, we have concluded that the jury's award of $25,000 was not supported by the evidence in that there was not sufficient proof to connect the conversion of one hopper containing eighty bushels of wheat seed to appellant's failed crop. Moreover, we find no evidence of appellees' financial and social condition and standing. Consequently, under our state-law analysis, we conclude that the award of $25,000 would shock this court's conscience, and, therefore, we find no error in the trial court's remittitur of the jury's punitive-damages award.

### b. Due-Process Analysis

In turning to our due-process analysis under *Gore, supra*, we examine the three designated guideposts for determining when an award would violate due process: (1) the degree of reprehensibility of the defendant's conduct, (2) the award's ratio to the actual harm inflicted on the plaintiff, (3) a comparison of the punitive damages to the civil or criminal penalties that could be imposed for comparable conduct. There is no mathematical bright line for determining gross excessiveness, and low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. *Routh Wrecker Serv., Inc., supra*. In addressing a party's challenge to an award of punitive damages, both the trial court and our court must give the punitive verdict the searching review required by our federal Constitution. *Jim Ray, Inc. v. Williams*, 99 Ark. App. 315, 260 S.W.3d 307 (2007). We must make a thorough and independent evaluation of the amount of punitive damages using all three constitutional guideposts. *Id.* Our analysis is fluid, rather than exact, and we are called to police a constitutionally acceptable range, not a fixed point. *Id.*

As in *Jim Ray, Inc., supra*, in considering the degree of reprehensibility of David Bullock's conduct, we consider the following factors — the conversion of the wheat seed was purely economic conduct, not physical; it showed no indifference to Mr. Graves's health or safety; there was no proof that Mr. Graves was

vulnerable, financially or otherwise; and Bullock's conduct did not involve a course of dealings over an extended period involving many bad acts. And, similar to the conduct in *Jim Ray, Inc., supra*, Bullock's conduct was neither accidental nor malicious. On the reprehensibility scale, it falls somewhere in the middle.

As explained previously in this opinion, we found no basis for reversal of the trial court's reduction of the jury's compensatory-damages award to $912. Therefore, if the punitive-damages award were allowed to stand at $25,000, the ratio between the two would be approximately 27 to 1. As we noted in *Jim Ray, Inc., supra*, few awards exceeding a single-digit ratio will satisfy due process. The trial court reduced the jury's punitive-damages award to $4,500 in order to approximate the ratio between the jury's original compensatory- and punitive-damages awards. The resulting ratio is 4.93 to 1.

The third due-process factor involves assessing the punitive-damages award by comparing it to applicable statutory penalties and comparable cases, which represent the notice component of the analysis. Neither party presented us with applicable statutory penalties. In *Hudson v. Cook*, 82 Ark. App. 246, 105 S.W.3d 821 (2003), a case discussed by both parties, the ratio between compensatory and punitive damages was 7 to 1. Appellees distinguish *Hudson* by noting that it involved physical and verbal attacks and other conduct that was more reprehensible than mere conversion. In *Jim Ray, Inc., supra*, however, involving fraudulent behavior that was regarded as purely economic harm and not particularly reprehensible, a 7 to 1 ratio was justified in light of the modest compensatory damages awarded and the need to deter similar, future conduct.

■ Our de novo review of the punitive-damages issue in this case has brought us to the conclusion that the trial court was correct in concluding that the $25,000 awarded by the jury was excessive under both a state-law and a due-process analysis. However, we have further concluded that in reducing the award, the trial court limited itself to a mechanical retention of the original ratio between the reduced compensatory and punitive damages. In so doing, it did not engage in the required searching review of the issue. Following our de novo review, and applying a similar analysis to what we did in *Jim Ray, Inc., supra*, we conclude that while appellees' conduct was not particularly reprehensible, a

higher ratio than that calculated by the trial court is justified in light of the modest compensatory damages and the need to deter similar, future conduct.

For the reasons stated above, we affirm the trial court's remittitur of compensatory damages to $912; we affirm, as modified to $8000, the trial court's remittitur of punitive damages; and we remand with instructions to enter a judgment in accordance with this opinion, if appellant agrees. If appellant does not agree to this remittitur, we remand for a new trial. *See Williams v. Charles Sloan, Inc.*, 17 Ark. App. 247, 706 S.W.2d 405 (1986).

Affirmed in part; affirmed in part, as modified; and remanded.

ROBBINS and BIRD, JJ., agree.