**UNITED STATES, Plaintiff,**

v.

**OAK MANOR APARTMENTS; Big D Enterprises, Inc.; Dr. Edwin G. Dooley; and Carol Ragan, Defendants.**

No. Civ. 97–2056.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

June 24, 1998.

**1048**

Paul F. Hancock, Isabelle Katz Pinzler, Barbara Kammerman, Seth Rosenthal, U.S. Department of Justice–Civil Rights Division, Washington, DC, Deborah Fennell Groom, Asst. U.S. Attorney, Fort Smith, AR, for Plaintiff.

Edwin G. Dooley, Jr., Dooley Law Offices, Ft. Smith, AR, Mr. James B. Pierce, Fort Smith, AR, for Defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Senior District Judge.

This action is currently before the court on the defendants' motion for judgment as a matter of law, or in the alternative, remittitur of punitive damages or new trial.

### Background.

The United States filed this action on March 14, 1997, to enforce the provisions of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* The action was brought on behalf of Cynthia L. Parks and others aggrieved by the alleged discriminatory housing practices. Oak Manor Apartments is an apartment complex located in Ft. Smith, Arkansas. Big D Enterprises, Inc., manages Oak Manor Apartments, Village South Apartments and Park Terrace Apartments, all located in Ft. Smith. Dr. Edwin G. Dooley is the president, chief executive officer, and sole stockholder of Big D Enterprises and the owner of Oak Manor Apartments and Park Terrace Apartments.

It was the United States' position that until approximately November of 1994, when they first became aware that formal charges of housing discrimination had been lodged against them, defendants generally adhered to a policy of refusing to rent apartment units to prospective African American tenants on account of their race. It contended

these discriminatory housing practices first came to light through Cynthia Parks.

On November 1, 1994, Parks filed a complaint alleging discrimination on the basis of race under the Fair Housing Act. After an investigation, the Secretary of Housing and Urban Development determined there was reasonable cause to believe that a discriminatory housing practice had occurred. On January 23, 1997, the Secretary issued a charge of discrimination pursuant to 42 U.S.C. § 3610(g)(2)(A). On February 14, 1997, the defendants elected to have the charge of discrimination resolved in a civil action. 42 U.S.C. § 3612(a).

Parks is a white female who was at the relevant time separated from her husband, an African American. Parks is the custodial parent of two minor children, one of whom is biracial (Black/White). On or about October 19, 1994, she inquired about renting an apartment at Oak Manor Apartments. Parks testified that Carol Ragan,[1] the resident apartment manager at Oak Manor, was initially receptive to her inquiry. However Parks testified that the next day when she returned to tender the deposit and pick up the keys, Ragan informed her that she could not rent the apartment because of her references. The United States contended the defendants engaged in unlawful discrimination on the basis of race or color by refusing to rent Parks an apartment unit at Oak Manor Apartments. Specifically, the government contended the defendants refused to rent her an apartment because of the race of her biracial child.

Count one of the complaint set forth the allegations regarding Parks and asserted defendants violated 42 U.S.C. § 3604(a)–(c). Count two of the complaint alleged that the defendants had made statements in addition to the ones mentioned in count one "indicating a preference not to rent apartment units at Oak Manor Apartments and at another complex owned by defendant Dooley and managed by defendant Big D Enterprises, to persons who are African American." It is further alleged that defendants had "refused to rent apartment units to persons who are African American and have made apartment units available to white persons on terms more favorable than those on which they have made such units available to African American persons." It was alleged that "[i]n addition to Cynthia L. Parks, there are other victims of the defendants' discriminatory actions and practices who are aggrieved persons as defined in 42 U.S.C. § 3602(i). These victims have suffered actual injury and damages as a result of the defendants' actions and practices." The only other victims identified during discovery were Janet Poole and Richard Batts, a bi-racial couple who attempted to rent an apartment.

The case was tried to a jury beginning on April 27, 1998, and ending on April 30, 1998. The United States sought the following relief: (1) an order declaring that the defendants' discriminatory housing practices violate the Act; (2) an order enjoining the defendants from further discrimination; (3) an award of compensatory damages in the amount of $25,000 to the identified victims, Cynthia L. Parks and her minor children, and Janet Poole/Richard Batts; (4) an award of punitive damages in the amount of at least $50,000 in favor of Cynthia L. Parks, and Janet Poole/Richard Batts; and (5) the assessment of civil penalties of up to $50,000 against each defendant.

At the conclusion of their deliberations, the jury found that Dr. Dooley, or his agents or employees, and Big D Enterprises, or its agents or employees had discriminated against Parks and her minor children. The jury further found that Dr. Dooley, or his agents or employees, and Big D Enterprises, or its agents or employees, had engaged in a pattern or practice of housing discrimination in violation of the Fair Housing Act. The jury then assessed $500 compensatory damages in favor of Parks and her minor children and $25,000 punitive damages in their favor against each of the defendants. Identical damages were awarded Janet Poole and Richard Batts.

On May 12, 1998, the court entered judgment in the United States' favor. The judgment reflected the monetary awards of the jury and the declaratory and injunctive relief the court determined was appropriate. The court declined to assess civil penalties.

---

1. All issues concerning Carol Ragan were resolved by consent decree prior to trial.

### Applicable Standards.

In *White v. Pence,* 961 F.2d 776 (8th Cir. 1992), a case arising out of this court, the Court of Appeals for the Eighth Circuit reviewed the applicable standard for evaluating motions for judgment as a matter of law (formerly motions for judgment notwithstanding the verdict). In summarizing the applicable standard the court stated as follows:

> In a motion for j.n.o.v., the question is a legal one, whether there is sufficient evidence to support a jury verdict. This court must analyze the evidence in the light most favorable to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility. We have also stated that to sustain a motion for j.n.o.v., all the evidence must point one way and be susceptible of no reasonable inference sustaining the position of the nonmoving party.

*Id.* at 779 (citations omitted).

With regard to the alternate motion for new trial, the standard to be applied was also reviewed in *White v. Pence,* 961 F.2d 776 (8th Cir.1992). The court summarized the applicable standard as follows:

> With respect to motions for new trial on the question of whether the verdict is against the weight of the evidence, we have stated: "In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence—it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." ... Regardless of the rhetoric used the true standard for granting a new trial on the basis of the weight of the evidence is simply one which measures the result in terms of whether a miscarriage of justice has occurred. When through judicial balancing the trial court determines that the first trial has resulted in a miscarriage of justice, the court may order a new trial, otherwise not.

*Id.* at 780 (citations omitted).

A court should grant "remittitur only when the verdict is so grossly excessive as to shock the court's conscience." *American Business Interiors, Inc. v. Haworth, Inc.,* 798 F.2d 1135, 1146 (8th Cir.1986). A verdict may be considered excessive if there is plain injustice, or a monstrous or shocking result. *Jenkins v. McLean Hotels, Inc.,* 859 F.2d 598, 600 (8th Cir.1988).

### Discussion.

Defendants present a number of arguments which they contend entitle them to judgment as a matter of law, new trial, or a remittitur of the amount of punitive damages. First, defendants seek judgment as a matter of law on the grounds that the applicable statute of limitation had run upon the claims of the plaintiff. Second, defendants argue it was plain error to admit evidence of financial worth of either defendant when plaintiff sought punitive damages from each defendant. Third, defendants argue the punitive damage award against each separate defendant is plainly excessive and violates each separate defendant's right to due process of law and is otherwise improper and excessive under the facts and law. Fourth, defendants contend they are entitled to judgment as a matter of law or remittitur of the punitive damages award because of the improper admission of evidence directly related to the awards against them.

### 1. Statute of Limitations.

Defendants contend this action was not commenced within eighteen months after the date of the occurrence or the termination of the alleged discriminatory housing practice as required by 42 U.S.C. § 3614(b)(1)(B) for claims referred to the Attorney General by the Department of Housing and Development (HUD). With respect to Parks, defendants point out the alleged discriminatory conduct occurred on October 20, 1994. The complaint was not filed until March 14, 1997. With respect to Batts and Poole, defendants state the trial testimony established the discriminatory act occurred prior to October 20, 1994.

Thus with respect to each aggrieved individual, defendants contend the statute of limitations has run unless extended by a continuing course of discriminatory housing practices. Defendants point out that in its opening and closing statements the government stated that the alleged discriminatory

housing practices ceased on or about November of 1994. Defendants concede that they introduced an affidavit of Darlene Baughman which contended the discriminatory housing practices occurred until May of 1995. Eighteen months from this date would have been in November of 1996. Defendants state they could not have raised this issue earlier because count two of the complaint pled an existing and ongoing pattern and practice of housing discrimination.

■ First, we find the defendants waived this issue by not raising it until this post-trial motion. The statute of limitations is an affirmative defense; unless it is properly raised by the defense, it is waived. Fed.R.Civ.P. 8(c). *Hoover v. Armco, Inc.*, 915 F.2d 355, 358 (8th Cir.1990). *See also Day v. Liberty National Life Ins. Co.*, 122 F.3d 1012 (11th Cir.1997), *cert. denied*, — U.S. ——, 118 S.Ct. 1797, 140 L.Ed.2d 938 (1998) (statute of limitations defense waived when raised for the first time after a jury verdict).

Defendants argue any lateness in raising this defense should be excused because they were unaware of the specific facts until trial. They state it was not until then that they realized the government would concede that any discrimination ended in November of 1994. We find this argument unavailing. First, the government brought two separate claims—one on behalf of Cynthia Parks and her children and the second a pattern and practice claim. With respect to the first claim, defendants were well aware of the date on which it was alleged they discriminatorily denied Parks a rental unit. With respect to the second claim, defendants were well aware of the fact prior to trial that the government could identify no victims of the pattern and practice other than Cynthia Parks and Richard Batts and Janet Poole. In fact, defendants moved pretrial to exclude any testimony regarding acts of discrimination taken against other individuals.

Further as the government points out, it filed its pretrial on March 2, 1998, which contained the following statement: "Until approximately November 1994, when they first became aware that formal charges of housing discrimination had been lodged against them, defendants generally adhered to a policy of refusing to rent apartment units to prospective African American tenants on account of their race." Thus, defendants had notice no later than March 2, 1998, of the possible statute of limitations defense yet failed to raise the defense until after the trial and resulting verdict.

■ Second, even if this defense is not waived, defendants have misapplied the statute of limitations provision on which they rely. Section 3614 applies to enforcement actions brought by the Attorney General. 42 U.S.C. § 3614. Subsection (a) applies to pattern of practice cases such as that asserted in count two of the complaint in this case and contains no statute of limitations. *United States v. Incorporated Village of Island Park*, 791 F.Supp. 354, 365 (E.D.N.Y.1992) (The time limits contained in § 3614(b)(1) have no application to suits under § 3614(a)); *United States v. Incorporated Village of Island Park*, 888 F.Supp. 419, 448 (E.D.N.Y. 1995). This section gives the Attorney General independent authority to initiate and pursue a suit without regard to any HUD investigation. *See e.g., United States v. Lorantffy Care Center*, 999 F.Supp. 1037 (N.D.Ohio 1998).[2] Thus, the statute of limitations provision relied on by defendants has no application to count two.

Subsection (b) deals with cases referred to the Attorney General and provides as follows:

**(b) On referral of discriminatory housing practice or conciliation agreement for enforcement**

(1)(A) The Attorney General may commence a civil action in any appropriate United States district court for appropriate relief with respect to a discriminatory housing practice referred to the Attorney

---

2. The United States in its response points out that the issue may be somewhat different with respect to its claim for damages on behalf of Janet Poole and Richard Batts under § 3614(d)(1)(B). It notes that it has not been definitely resolved whether any statute of limitations applies to claims for damages under § 3614. We find it unnecessary to reach this issue. Clearly the provision relied on by defendants in arguing this claim was time barred at the time of trial has no application to a claim brought under § 3614(a) as this claim was.

General by the Secretary under Section 3610(g) of this title.

**(B)** A civil action under this paragraph may be commenced not later than the expiration of 18 months after the date of the occurrence or the termination of the alleged discriminatory housing practice.

42 U.S.C. § 3614(b).

■ The allegations contained in count one of the complaint in this case were based on the provisions of § 3612(*o*) not § 3610(g). The only reference to, or provision for, a referral to the Attorney General contained in § 3610(g) is that contained in § 3610(g)(2)(C). Under § 3610(g)(2)(C), the Secretary immediately refers matters to the Attorney General for appropriate action under § 3614 when the matter "involves the legality of any State or local zoning or other land use law or ordinance" 42 U.S.C. § 3610(g)(2)(C). Thus, the statute of limitations relied on by defendants is inapplicable. *United States v. Incorporated Village of Island Park,* 791 F.Supp. 354, 366 (E.D.N.Y. 1992) (limitation period applies only to referred actions involving local zoning or other land use law or ordinances or to breaches or a conciliation agreement).

Count one of the complaint was filed by the government under the provisions of § 3612(*o*). Section 3612(*o*) applies when a respondent, in this case the defendants, elect to have the claims asserted in a charge filed by the Secretary under § 3610 adjudicated in a civil action. Section 3612(*o*) provides that "[i]f an election is made … the Secretary shall authorize, and not later than 30 days after the election is made the Attorney General shall commence and maintain, a civil action on behalf of the aggrieved person in a United States district court seeking relief under this subsection." 42 U.S.C. § 3612(*o*)(1).

### 2. Punitive Damages.

Defendants contend we should remit all or part of the punitive damage award or alternatively grant them a new trial. Defendants first argue that, under Arkansas law, it is error to admit financial information when two or more defendants are alleged to be joint tortfeasors.

We note, as did the government, that defendants failed to raise this objection at the trial. Instead, at trial defendants objected only to the introduction of financial worth evidence on the grounds that the United States had not made out a prima facie case for punitive damages. *McKnight v. Johnson Controls, Inc.,* 36 F.3d 1396, 1407 (8th Cir. 1994) (Without an objection and a proper request for relief, the matter is waived and will receive no consideration on appeal absent plain error).

■ Defendants premise their arguments on Arkansas case law but fail to cite any authority or make any argument why Arkansas law should be applied to this issue under the Fair Housing Act. We believe federal law and not state law governs issues regarding awards of punitive damages under the Fair Housing Act. To hold otherwise would result in the very real potential for divergent and inconsistent rulings on the admissibility of financial information and the need for an individualized assessment or apportionment of punitive damages between multiple defendants.

■ In this case the jury was asked to determine on an individualized basis whether each defendant's conduct was such that punitive damages should be assessed. Once it answered affirmatively with respect to each defendant, the jury was asked to separately assess punitive damages against each defendant. *See e.g., McFadden v. Sanchez,* 710 F.2d 907, 912–14 (2d Cir.1983) (Under § 1983, individualized assessment of punitive damages is required). Contrary to defendants' assertion we believe this individualized assessment guarded against any possible confusion of the jury between the acts of the separate defendants, if under these circumstances their acts could be considered separate, and their financial ability to pay the award. Further, we believe the goals of punitive damages, punishment and deterrence, are better served by a rule requiring an individualized assessment rather that a rule holding defendants jointly liable for punitive damage awards. Defendants have cited no federal law suggesting it was erroneous to admit financial information concerning each of the two defendants.

They next contend the assessment of damages was complicated by the court's interrogatories. Specifically, they point out the court did not require the jury to apportion the award of compensatory damages between the defendants but required the jury to assess punitive damages against each defendant separately. They suggest that, without the apportionment of compensatory damages between the two defendants, there is no way of knowing whether one defendant would have been apportioned 100% of the compensatory damages and the other 0%. If that were the case, defendants suggest an award of punitive damages cannot, under the law, be made against both defendants. Defendants once again cite to and rely on Arkansas law.

■ We find meritless defendants' argument that, given the method of submission on the compensatory damage award, it is impossible to determine if there is a compensatory damage award against each defendant which would support a punitive damage award. First, defendants once again appear to be relying entirely on Arkansas law which is inapplicable. Second, defendants did not raise the issue of apportionment of compensatory damages between the individual defendants at trial and therefore have waived the issue. Third, we believe no individualized assessment of compensatory damages was required. The jury separately determined that each defendant violated the provisions of the Fair Housing Act. Once both were determined to have violated the Act, they were, at least under the circumstances involved in this case, jointly liable for any injury to the aggrieved parties. *See e.g., Saunders v. General Services Corp.,* 659 F.Supp. 1042, 1059 (E.D.Va.1987) (A corporation and its officers are responsible for the acts of a subordinate employee in violation of the Fair Housing Act, even though those acts were neither directed or authorized, because of the non-delegable nature of the duty, both corporation and officer are jointly liable).

■ Next, defendants argue the award is excessive and violates due process. Defendants suggest that, when the compensatory damage award is compared to the punitive damage award, it is clear the jury award cannot pass constitutional muster. They suggest the ratio of punitive damages to actual damages in this case is comparable to the breathtaking ratio in *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Further since the government concedes the discrimination ceased in November of 1994, defendants contend the punitive damage award cannot be justified on deterrence grounds. Nor do defendants believe the award can be upheld under the Arkansas "shock the conscience" standard.

■ The purpose of punitive damages is to punish the defendants and/or deter similar conduct in the future. *See Pacific Mutual Life Ins. Co. v. Haslip,* 499 U.S. 1, 19–20, 111 S.Ct. 1032, 1044, 113 L.Ed.2d 1 (1991). "The due process clause of the Fourteenth Amendment prohibits the imposition of 'grossly excessive' punitive damages." *Dean v. Olibas,* 129 F.3d 1001, 1006 (8th Cir.1997) (*quoting, BMW of North America v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 1592, 134 L.Ed.2d 809 (1996) (*quoting, TXO Prod. Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 454, 113 S.Ct. 2711, 2718, 125 L.Ed.2d 366 (1993) (plurality opinion))).

The Supreme Court has identified relevant factors that bear on the reasonableness of punitive damage awards, at least the outer limits imposed by the Due Process Clause. "First, the Supreme Court has stated that 'a judgment that is a product of [fair procedures] is entitled to a strong presumption of validity.'" *Dean,* 129 F.3d at 1006 (citations omitted). These procedures include the impartial selection of the jurors, whether the jurors heard all the evidence presented by both sides, and whether the jurors were properly instructed on the law. *Id.* at 1007. With the exception of the arguments noted in this opinion, which we have rejected, defendants have presented no arguments that the procedures utilized were unfair.

In *BMW* the Supreme Court held that "[p]erhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *BMW,* 116 S.Ct. at 1599. The United States presented evidence which if believed by the trier of fact, which it was, established that the violations of the Fair Housing Act were purposeful.

The Supreme Court in *BMW* identified the ratio of punitive damages to the actual harm inflicted on the plaintiff as the second and most commonly cited indicium of an unreasonable or excessive punitive damages award. *BMW,* 116 S.Ct. at 1601. In this case, Parks and her children were awarded $500 in compensatory damages and $25,000 in punitive damages against each of the defendants. Thus, with respect to each defendant the ratio of punitive damages to actual damages was 50 to 1. Richard Batts and Janet Poole, as a couple, were awarded identical amounts. If the ratio is calculated utilizing the total punitive damages award, $50,000 in favor of Parks or Batts/Poole, the ratio would be 100 to 1. While this is high, there is no simple mathematical formula that can be applied and the Supreme Court has upheld a punitive damages award of over 526 times the size of the actual damages. *See TXO,* 113 S.Ct. at 2721–23. *But see BMW,* 116 S.Ct. at 1595–1604 (500 to 1 ratio between award and actual harm to purchaser was grossly excessive in light of low level of reprehensibility of conduct).

The court in *Dean* stated:

Indeed, the Court has stated that high punitive damages may properly accompany low compensatory damages in cases where the plaintiff's harm is primarily noneconomic and it is thus difficult to assign a monetary value to that harm. Moreover, in imposing punitive damages it is proper to consider not only the harm that actually resulted from the defendant's misdeeds but also the harm that *might have* resulted. This includes "the possible harm to other victims that might have resulted if similar future behavior were not deterred."

*Dean,* 129 F.3d at 1007 (citation omitted).

Another factor set forth in *BMW* was the difference between this remedy and the civil or criminal penalties that could be imposed for comparable misconduct. Under the Fair Housing Act, the court may assess civil penalties in an amount not exceeding $50,000 for a first violation. 42 U.S.C. § 3614(d)(1). Coincidently, this is the amount of punitive damages assessed against each of the defendants by the jury.

In assessing the penalties under the Fair Housing Act the court considers: (1) the nature and circumstances of the violation; (2) the degree of culpability; (3) the history of prior violations; (4) the financial circumstances of the defendant; (5) the goal of deterrence; and (6) other matters as justice may require. *Smith & Lee Associates v. City of Taylor, Mich.,* 102 F.3d 781, 798 (6th Cir.1996) (*quoting* House Comm. on the Judiciary, Fair Housing Amendments Act of 1988, H.R.Rep. No. 711, 100th Cong., 2d Sess. 18, *reprinted* in 1988 U.S.C.C.A.N. 2173, 2201). It has also been noted that civil penalties and punitive damages serve a common purpose—to punish wrongdoing. *United States v. Balistrieri,* 981 F.2d 916, 936 (7th Cir.1992).

In this case we declined to assess civil penalties. In so doing, the court considered a number of factors but of primary importance was the size of the punitive damage awards assessed by the jury.

Given the circumstances, we conclude the punitive damage awards were not so excessive as to violate due process. We believe the awards of punitive damages were within the limits the Constitution imposes.

Similarly, we do not believe remittitur is warranted under the circumstances. If plaintiff's evidence was believed, as it obviously was, there was an ample basis on which to award Parks and Batts/Poole substantial punitive damages. Certainly the court cannot say "the verdict is so grossly excessive as to shock the court's conscience." *American Business Interiors, Inc. v. Haworth, Inc.,* 798 F.2d 1135, 1146 (8th Cir.1986). Nor can we say the verdict results in plain injustice, or a monstrous or shocking result.

*Conclusion.*

For the reasons stated the motion for judgment as a matter of law, new trial, or remittitur, will be denied by a separate order entered concurrently herewith.