ROUTH WRECKER SERVICE, INC. *v.*
Codney A. WASHINGTON

98–403 980 S.W.2d 240

Supreme Court of Arkansas
Opinion delivered November 19, 1998

*Robert A. Newcomb*, for appellants.

*Evelyn L. Moorehead*, for appellee/cross-appellant.

ROBERT L. BROWN, Justice. This appeal raises the issues of whether the trial court should have granted the motion of appellants Routh's Wrecker Service, Inc., and Ronald Routh (hereafter jointly referred to as Routh) to direct a verdict on the abuse-of-process claim and, secondly, whether the trial court should have remitted the punitive-damages award. The Court of Appeals affirmed the judgment in favor of appellant/cross-appellee Codney A. Washington in an unpublished opinion. We granted review of the case to consider the trial court's ruling on punitive damages in light of *BMW of North America v. Gore*, 517 U.S. 559 (1996). We review the judgment, orders, and proceedings before the trial court as if the appeal had originally been filed in this court. *Malone v. Texarkana Pub. Sch.*, 333 Ark. 343, 969 S.W.2d 644 (1998). We hold that the trial court did not err in its rulings, and we affirm. With respect to Washington's cross-appeal, we likewise affirm.

The facts are these. On Saturday, June 11, 1994, Washington and a friend attended a car auction sponsored by Routh. At the auction, Washington purchased a 1988 Ford Escort for $400 and

paid Routh by check. Because the car was blocked by other cars, Washington did not take the car with him that day. Routh representatives told him he could leave the car on the lot for five business days. When he returned for the car on the following Monday, the Escort's battery, spare tire, and some tools were missing. Washington left the car on the lot and stopped payment on the $400 check. He later testified that he expected Routh to contact him to resolve the matter because he still intended to purchase the car.

On June 29, 1994, Ronald Routh, general manager of Routh Wrecker, contacted the prosecuting attorney's office and swore out an affidavit for a warrant of arrest for Washington. He averred in the affidavit that Washington had stopped payment on the check but had not returned the Escort to the premises nor the documentation for sale. On July 11, 1994, Little Rock police officers arrested Washington at his place of employment, First Commercial Bank in Little Rock. They handcuffed him at the bank, led him to a police car, booked him at the police station, and put him in a holding cell. After the arrest, Frank Washington, Washington's father, called Routh. Routh told him that all he wanted was his money and that he would drop the charges if he was paid. Washington advised his father not to pay the $400. Immediately after the arrest, Washington's attorney contacted Routh and told him that the car was still on the lot, which Routh verified. Routh explained to the attorney that storage charges on the vehicle had accrued and should be paid.

Routh did not drop the charges. On September 19, 1994, at the probable cause hearing in municipal court, the municipal judge found probable cause for a theft arrest based on Routh's testimony that Washington was given the car keys and legal documents and then stopped payment on the check. The case was certified to circuit court, where charges were not filed by the prosecuting attorney.

On June 28, 1996, Washington filed a complaint against Routh. His later amended complaint alleged abuse of process, malicious prosecution, libel, and conversion. He sought $75,000 or more in compensatory damages and $150,000 in punitive dam-

ages. The trial court dismissed the libel claim before trial began and directed a verdict in favor of Routh on the conversion charge following Washington's case-in-chief. The two claims of malicious prosecution and abuse of process went to the jury. The jury returned a verdict in Washington's favor of $1,000 in compensatory damages and $75,000 in punitive damages on the abuse-of-process claim and $0.00 compensatory damages and $75,000 in punitive damages on the malicious-prosecution claim. After the trial, the trial court entered a directed-verdict order in favor of Routh on the malicious-prosecution claim followed by a judgment for Washington on the claim for abuse of process. Routh filed a motion for judgment NOV, a new trial, and a remittitur, all of which were denied. He appealed from the judgment and the order denying the posttrial motions, and Washington cross-appealed.

## I. Motion to Dismiss the Appeal

We begin by deciding Washington's motion to dismiss this appeal. Washington's grounds for dismissal are that on May 13, 1997, he filed a motion under Ark. R. Civ. P. 52(b) for findings of fact concerning the trial court's dismissal of his libel claim and the directed verdict of his conversion claim. Routh then filed his notice of appeal on May 22, 1997. According to Washington, Routh's notice of appeal was premature because the trial court did not rule on his Rule 52(b) motion, and he had 30 days under Ark. R. App. P.—Civil 4(c) before the motion was deemed denied.

We disagree with Washington for the reason that we do not consider his motion for findings of fact to be a true Rule 52(b) motion. Rule 52(b), by its terms, applies to trials where the trial court has made findings of fact, and the movant requests the trial court to amend them. The trials contemplated are bench trials which is made clear in both sections (a) and (b) of Rule 52. Hence, Washington's motion for findings of fact following a jury trial does not qualify as a Rule 52(b) motion. Nor do we agree with Washington that the trial court's dismissal of the libel claims and its directed verdict on conversion equate to a bench trial on the merits. And, finally, Arkansas does not recognize the principle of additur. Thus, Washington's motion for additur does not qual-

ify as a motion for judgment NOV under Ark. R. Civ. P. 50(b) or motion for new trial under Ark. R. Civ. P. 59(5). Washington's motion is misguided, and it is denied.

## II. Directed Verdict on Abuse of Process

Routh strongly contends that the process in this case was not perverted to an improper motive after it was initially set in motion. He urges, in this regard, that the trial court erred in not directing a verdict in his favor on abuse of process.

■ ■ Our standard of review for the denial of a motion for a directed verdict is whether the jury's verdict is supported by substantial evidence. *See Union Pac. R.R. Co. v. Sharp*, 330 Ark. 174, 952 S.W.2d 658 (1997); *Ouachita Wilderness Inst. v. Mergen*, 329 Ark. 405, 947 S.W.2d 780 (1997). Substantial evidence is defined as "evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty; it must force the mind to pass beyond suspicion or conjecture." *Esry v. Carden*, 328 Ark. 153, 942 S.W.2d 846 (1997). When determining the sufficiency of the evidence, we review the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *See Union Pacific R.R. Co. v. Sharp, supra*. In such situations, the weight and value of testimony is a matter within the exclusive province of the jury. *See id.*

■ This court has stated that the test of abuse of process is whether a judicial process is used to extort or coerce. *See Corders v. Outdoor Living Ctr., Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989). The elements of the tort are: (1) a legal procedure set in motion in proper form, even with probable cause and ultimate success; (2) the procedure is perverted to accomplish an ulterior purpose for which it was not designed; and (3) a willful act is perpetrated in the use of process which is not proper in the regular conduct of the proceeding. *See Wynn v. Remet*, 321 Ark. 227, 902 S.W.2d 213 (1995); *Harmon v. Carco Carriage Corp.*, 320 Ark. 322, 895 S.W.2d 938 (1995). In short, the key to the tort is the improper use of process after its issuance in order to accomplish a purpose for which the process was not designed. *See Harmon v. Carco Car-*

*riage Corp., supra; Union Nat'l Bank v. Kutait,* 312 Ark. 14, 846 S.W.2d 652 (1993). Thus, it is the purpose for which the process is used, once issued, that is important in reaching a conclusion. *See Harmon, supra.*

In *Harmon, supra,* the defendant, a Hertz licensee, was instructed by the Hertz Claims Management Corporation, which was involved in a dispute with the plaintiff, not to extend its lease agreement with the plaintiff. The company instructed the defendant to collect the rental fee from the plaintiff or get the car back. The defendant completed an affidavit for a warrant for plaintiff's arrest, stating that the plaintiff had leased the car and refused to return it. After the warrant was issued, the defendant did nothing to stop the proceedings even though it was told the car was available to be picked up. In holding that summary judgment in favor of the defendant on the abuse-of-process claim was error, we noted a potential abuse of process in the defendant's failure to do anything to prevent the issuance of the arrest warrant or the trial itself. We further observed that the use of criminal prosecution to extort payment of money or recovery of property is a classic example of the tort of abuse of process.

The *Harmon* facts bear some similarity to the case at bar. Here, Routh initiated a proceeding against Washington that caused his arrest. Washington's father testified that he spoke to Ron Routh after the arrest and Routh's response was that all he wanted was his money and he would drop the charges. Routh admitted that although he knew the car was on the lot, he did not ask to drop the charges. Instead, he allowed the case to proceed to a probable-cause hearing in municipal court, after which it was bound over to circuit court. Routh knew that Washington did not have the odometer statement which is necessary to obtain the actual certificate of title to the car. He further knew that Washington did not have the car itself, and he later admitted that he did not know who had the keys to the car. However, at the probable-cause hearing, Routh testified that Washington had failed to return the keys and the legal paperwork. This inconsistency between Routh's knowledge and testimony in municipal court was emphasized by Washington at the civil trial.

■ We conclude that after the arrest warrant, Routh allowed the case to proceed to a hearing in municipal court for the coercive purpose of collecting the $400. This is enough for Washington's case to survive a directed verdict for abuse of process. We affirm the trial court on this point.

### III. Punitive Damages

Routh next argues that an award of $75,000 in punitive damages, when the compensatory damages were only $1,000, is excessive and violates due process under *BMW of North America, Inc. v. Gore, supra.* He also underscores that this court has never upheld a punitive-damage award with a ratio as high as 75 to 1.

■ State appellate courts that have considered the punitive-damages issue in light of *Gore* have adopted a two-step analysis. The first step is to determine whether the award of punitives damages is excessive under state law; the next is to consider the award in light of the due-process analysis in *Gore. See Ford Motor Co. v. Sperau,* 708 So.2d 111 (Ala. 1998) (reducing $6 million in punitives to $1.792 million based on the lack of a high degree of reprehensibility); *Wightman v. Consolidated Rail Corp.,* No. E-97-001, 1997 WL 614926 (Ohio Ct. App. Sept. 30, 1997) (affirming $15,000,000 in punitives when actual damages were $2,400). *See also United States v. Oak Manor Apts.,* 11 F. Supp. 2d 1047 (W.D. Ark. 1998) (punitive damages of $50,000 following compensatory damages of $500 for purposeful housing discrimination were not so excessive as to violate due process.)

■ When considering the issue of remittitur of punitive damages, we review the issue *de novo. See Smith v. Hansen,* 323 Ark. 188, 914 S.W.2d 285 (1996). We consider the extent and enormity of the wrong, the intent of the party committing the wrong, all the circumstances, and the financial and social condition and standing of the erring party. *See United Ins. Co. of America v. Murphy,* 331 Ark. 364, 961 S.W.2d 752 (1998); *McLaughlin v. Cox,* 324 Ark. 361, 922 S.W.2d 327 (1996). Punitive damages are a penalty for conduct that is malicious or perpetrated with the deliberate intent to injure another. *See United States Ins. Co., supra.* When punitive damages are alleged to be exces-

sive, we review the proof and all reasonable inferences in the light most favorable to the appellees, and we determine whether the verdict is so great as to shock the conscience of this court or to demonstrate passion or prejudice on the part of the trier of fact. *See Houston v. Knoedl,* 329 Ark. 91, 947 S.W.2d 745 (1997); *Collins v. Hinton,* 327 Ark. 159, 937 S.W.2d 164 (1997). It is important that the punitive damages be sufficient to deter others from comparable conduct in the future. *See McLaughlin v. Cox, supra.*

In this case, the trial court denied Routh's motion for remittitur and found that there was some evidence of Routh's wealth in the testimony that the business has 20 employees and owns a 5 to 6 acre enterprise and that hundreds of cars are sold there every few months. The trial court also stated that the judgment did not shock its conscience and that it felt, in view of what Washington suffered at work, the damages awarded may not have been enough.

We affirm the trial court's decision not to grant a remittitur. The circumstances in this case are egregious and nightmarish. Washington, a young African-American male, was arrested at work at the bank in front of his peers and supervisor. The testimony was that he was humiliated, suffered emotional distress, and was frightened about what might happen to him. After the arrest, he suffered migraine headaches and could not sleep or eat. He lost 30 pounds. Several witnesses testified to the dramatic and negative changes to him, including a loss of interest in social activities and depression. His psychologist, Dr. James Moneypenney, testified that because of Washington's status as a young African-American, the arrest struck at the core of his identity and that "something important has been taken from him and I think he is going to continue to suffer from that."

Even after he found the Escort on his lot, Routh did nothing to stop the proceedings against Washington. He did not inform the prosecuting attorney that the car was on his lot until the day of the probable-cause hearing. At the hearing, he testified that Washington had failed to return the paperwork or keys to him, implying that Washington had converted this property, if not the car itself. In point of fact, Washington never had the keys to

the car in his possession, never took the car from the lot, and never had all the necessary paperwork to obtain title to the Escort. We conclude that malice can certainly be inferred from Routh's statement to Washington's father that if he got paid, he would drop the charges. We hold that the jury's punitive award was not excessive.

■ We turn then to the argument that the punitive damages were grossly excessive and violated due process under *BMW of North America v. Gore, supra.* In *Gore,* the United States Supreme Court held that the due process clause of the Fourteenth Amendment prohibits a state from imposing grossly excessive punishment on a tortfeasor. In that case, a new car purchaser sued after discovering that his car had been repainted prior to the sale. The jury awarded the purchaser $2 million in punitive damages. The Court held this award to be grossly excessive in light of the low level of reprehensibility of the conduct and the 500 to 1 ratio between the award and the actual harm. (There had been an award of $4,000 in compensatory damages.) The Court set out three guidelines for determining when an award would violate due process: (1) the degree of reprehensibility of the defendant's conduct, (2) the award's ratio to the actual harm inflicted on the plaintiff, and (3) a comparison of the punitive damages to the civil or criminal penalties that could be imposed for comparable conduct. The Court said that there was no mathematical bright line for determining gross excessiveness and that "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages." *Gore,* 517 U.S. at 1602.

■ We think that the reprehensibility of Routh's conduct in this case was high. He caused the arrest of Washington and then allowed the matter to proceed to municipal court in an effort to collect $400, though he had to know that Washington was not guilty of theft. The resulting impact on Washington was extreme psychological pressure and turmoil. The ratio of compensatory damages to punitive damages in the case was 75 to 1, which is well below the 500 to 1 ratio in *Gore.* Using the *Gore* factors, we conclude that the punitive damages of $75,000 are not so grossly excessive as to violate due process.

## IV. Cross-appeal

■ Washington cross-appeals on the trial court's dismissal of the libel count and the trial court's supersedeas order which quashed his writ of garnishment on the judgment. For his first point, he urges that the trial court erred in affirming a rule of absolute privilege for any false statements made by Routh in municipal court. The issue raised by Washington concerns judicial immunity for witnesses testifying in private litigation. The law is capsulized in the RESTATEMENT OF TORTS, SECOND:

> A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

RESTATEMENT OF TORTS, SECOND § 587 (1977). *See also Mershon v. Beasley*, 994 F.2d 449 (8th Cir. 1993); *Barnett v. Mobile County Personnel Bd.*, 536 So.2d 46 (Ala. 1988); *Mauney v. Millar*, 142 Ark. 500, 219 S.W. 1032 (1920); *Spencer v. Spencer*, 479 N.W.2d 293 (Iowa 1991). *Cf. Selby v. Burgess*, 289 Ark. 491, 712 S.W.2d 898 (1986) (attorney privilege for judicial pleadings). The trial court in the instant case clearly found Routh's testimony to be relevant to the proceeding. We cannot say the trial court erred in this regard.

With regard to his second point that the trial court erred in quashing his writ of garnishment, we consider the issue essentially moot because of our decision today. On June 2, 1997, Routh filed a motion for the trial court to approve his supersedeas bond based on a proposed purchase of an $84,000 certificate of deposit jointly payable to Routh and Washington and to stay execution of the judgment. On June 5, 1997, a writ of garnishment was issued by the circuit clerk to Boatmen's National Bank to satisfy the judgment in favor of Washington. On June 7, 1997, Washington objected to the certificate of deposit as security and stated that only a bond or pledge of real property would protect him. On June 9, 1997, Boatmen's National Bank was ordered by the trial

court to fund a certificate of deposit in the amount of $84,000 in the name of the circuit clerk as a supersedeas bond and deliver the CD to the circuit clerk.[1] Upon issuance of the CD, the trial court ordered that Boatmen's would be discharged from the writ of garnishment.

 Following the mandate from the Clerk of the Supreme Court, Washington may pursue collection of his judgment against the certificate of deposit in the amount of $84,000 which was ordered delivered to the circuit clerk and held as a supersedeas bond. If for some reason the CD was not posted with the clerk, and the record is silent on this point, Washington's writ of garnishment to Boatmen's National Bank remains an effective lien under the trial court's order. In sum, even if the supersedeas bond was filed after the writ of garnishment was issued, Washington has recourse, first, against the CD and, second, against Boatmen's National Bank or its successor. We need not decide the issue raised.

Washington's motion to dismiss is denied.

We affirm on direct appeal

We affirm on cross-appeal.

CORBIN, J., not participating.

---

[1] Washington's notice of appeal was filed on June 27, 1997, which was within the 30-day time period from the order quashing the writ of garnishment. His appeal from that order is in the nature of a direct appeal. *See* Ark. R. App. P.—Civil 2(a)5.