AON RISK SERVICES *v.* MICKLES

CA 05-1397 242 S.W.3d 286

Court of Appeals of Arkansas
Opinion delivered November 1, 2006

[Rehearing denied December 6, 2006.]

*Tony L. Wilcox, P.A.*, by: *Tony L. Wilcox; Orr, Scholtens, Willhite & Averitt, PLC*, by: *Chris A. Averitt*, for appellant.

*Gary Eubanks and Associates*, by: *William Gary Holt* and *Russell D. Marlin*, for appellee.

JOHN B. ROBBINS, Judge. In 1996, appellant Aon Risk Services, as agent for Cincinnati Life Insurance Company (CLIC), sold a policy to appellee Linda Mickles insuring the life of her son, Antonio Robinson. When Antonio died later that year, appellee submitted a claim to CLIC for the policy proceeds, which CLIC rejected due to an alleged misrepresentation in the application. Appellee denied making the misrepresentation, and indeed later events showed that the words constituting the misrepresentation had been placed on the application by someone other than appellee. Appellee sued CLIC and Aon and obtained a jury verdict for bad faith and outrage against CLIC and deceit and outrage against Aon; she was awarded $120,000 in compensatory damages, apportioned fifty per-cent to each defendant, and $1 million in punitive damages against CLIC and Aon individually. Aon and CLIC appealed, and in *Cincinnati Life Insurance Co. v. Mickles*, 85 Ark. App. 188, 148 S.W.3d 768 (2004) (*Mickles I*), we affirmed the verdict against CLIC, while reversing and remanding the verdict against Aon for a new trial. Thereafter, appellee accepted a satisfaction of judgment from CLIC for $1,060,000, plus costs and interest.

In May 2005, a new trial was conducted on appellee's outrage and deceit claims against Aon. On this occasion, the jury found against appellee on her outrage claim but awarded her

$58,884 on her deceit claim, plus $2 million in punitive damages. Aon filed post-trial motions, after which the deceit award was reduced to $29,942, but the punitive verdict stood. Aon now appeals and raises the following arguments: 1) appellee's claim for deceit was not supported by substantial evidence; 2) appellee's compensatory verdict should be reduced by $60,000 previously paid by CLIC, which would result in a zero verdict against Aon; 3) because the compensatory verdict should be reduced to zero, the punitive-damages award cannot stand; 4) alternatively, the punitive-damages award is excessive under Arkansas common law and the Due Process Clause of the United States Constitution. We affirm the verdict of $29,942 in compensatory damages and as modified to $750,000 in punitive damages on condition of a remittitur.[1]

Although we set out the facts of this case in *Mickles I*, we reiterate some of the more pertinent evidence here to provide a context for our discussion. In 1996, Aon was employed by CLIC as its agent for the purpose of selling life insurance policies and taking applications at the applicants' places of employment. According to the CLIC manual, its policies were available to employees and their spouses or "children, under age 23, unmarried, not in military service and dependent upon you for their support." Appellee was a minimum-wage worker in the laundry department of Chenal Rehabilitation Clinic in Little Rock when Aon representatives visited her workplace in July 1996. In response to the visit, appellee took out nine policies on her children and grandchildren, including her son, Antonio. In completing the applications, appellee verbally answered the questions and the enroller wrote down her answers. During this process, she asked the enroller whether Antonio would qualify for a policy since he was married and did not live with her; she further explained that Antonio had a learning disability, could not read or write, and qualified for SSI benefits, which she distributed to him as needed. The enroller assured her that Antonio would qualify and further, according to appellee, told her that the policy would pay double indemnity should Antonio's death be accidental.

The application for Antonio's policy, which CLIC would later claim contained a misrepresentation, reflected that he was a dependent, was just under twenty-one years old, that he was

---

[1] Our supreme court denied Aon's motion to certify and transfer this case.

married, and that he was a full-time student; it was signed by appellee and by James Foster of Aon as the "Agent Witness." The face amount of the policy was originally stated on the application as $38,942, but that figure was crossed out and $28,942 written in its place. The application was accepted by CLIC, and the policy was delivered in November 1996.

On December 17, 1996, Antonio was murdered in Little Rock. Appellee notified CLIC of Antonio's death, and CLIC reviewed the claim. In doing so, it discovered that Antonio's death certificate listed his occupation as a laborer, which did not correspond to the representation on the application that Antonio was a dependent and a full-time student. CLIC sent an investigator to obtain a statement from appellee, and she told him, among other things, that she had not told the enroller that Antonio was a full-time student.

At about the same time that the investigation was taking place, CLIC sent a questionnaire to James Foster of Aon, whose name had appeared on the application as the witnessing agent. In his answers, Foster represented that he had taken the application from appellee, that appellee had answered the questions on the application, and that the answers were accurately recorded. At one point, the questionnaire asked: "Did [appellee] tell you Antonio Robinson was a full time student?" Foster did not respond to that question. It would later be revealed that Foster had never been to Little Rock, had not taken appellee's application, and did not know who did. He denied ever having seen the questionnaire sent by CLIC. It would also later be revealed, through the testimony of a forensic expert, that the handwriting on the words "full time student" could not be matched to appellee and was inconsistent with the writing on the remainder of Antonio's application and the other applications, giving rise to the implication that the words "full time student" were placed on the application by someone other than appellee or the enroller.

Following its investigation, CLIC decided to rescind the policy, despite several factors pointing to a lack of any misrepresentation by appellee, including her insistence that she had not identified Antonio as a full-time student; Foster's failure to answer the crucial question of whether appellee told him that Antonio was a full-time student; the lack of any requirement in the CLIC manual that the insured be a full-time student; and a CLIC representative's realization that the words "full time student" were in different handwriting from the rest of the application. There-

after, appellee sued CLIC and Aon and obtained the aforementioned jury verdict against CLIC for bad faith and outrage and Aon for deceit and outrage. The jury awarded $1 million in punitive damages against CLIC; $1 million in punitive damages against Aon; and $120,000 in compensatory damages, which, although it was apportioned fifty percent to CLIC and fifty percent to Aon, was not broken down by cause of action.

On appeal in *Mickles I*, we affirmed the verdict against CLIC. We also determined that there was substantial evidence to support the deceit and outrage verdicts against Aon. However, we concluded that the trial court gave an erroneous jury instruction on the deceit count (which count was solely against Aon), and, because erroneous instructions are presumed to be prejudicial, we were required to reverse and remand the verdict against Aon. Further, because the jury's verdict did not state what portion of the monetary award against Aon was attributable to outrage and what was attributable to deceit, we reversed the verdict against Aon in its entirety. Several months after our decision, CLIC entered a satisfaction of judgment in favor of appellee for $1,060,000 plus interest and costs.

On re-trial against Aon in May 2005, appellee based her cause of action for deceit on the theory that she had relied to her detriment on Aon's false representation that the policy would provide double indemnity in the event of Antonio's accidental death. The jury found in favor of appellee on her deceit cause of action and awarded her $58,884, which was approximately twice the policy's face amount of $28,942. The trial judge deducted from that amount $28,942 that CLIC had previously tendered to appellee, leaving appellee with a final compensatory judgment of $29,942. The trial court declined Aon's request to further reduce the compensatory verdict by $60,000, paid by CLIC as part of its satisfaction of judgment. Finally, the court refused Aon's motion for a remittitur of the $2 million punitive-damages award or, alternatively, a new trial. This appeal followed.

### Was The Deceit Verdict Supported By Substantial Evidence?

At the trial level, Aon moved for a directed verdict and a judgment notwithstanding the verdict (JNOV) on the ground that appellee had not produced sufficient evidence to support her cause of action for deceit. The standard of review for denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence, which is evidence that goes beyond suspicion

or conjecture and is sufficient to compel a conclusion one way or the other. *Caddo Valley v. George*, 340 Ark. 203, 9 S.W.3d 481 (2000). A motion for a JNOV is technically only a renewal of the motion for a directed verdict made at the close of the evidence; a trial court may enter a JNOV only if there is no substantial evidence to support the jury verdict, and the moving party is entitled to judgment as a matter of law. *Conagra, Inc. v. Strother*, 340 Ark. 672, 13 S.W.3d 150 (2000).

The essential elements of an action for deceit are: (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; (5) damage suffered as a result of the reliance. *Mickles I, supra*. Aon contends that appellee's proof was lacking on each of these elements. Appellee responds that she proved the elements of deceit and, in any event, our statement in *Mickles I* that there was substantial evidence to support the deceit count is now law of the case.

We do not decide the question of whether our statement in *Mickles I* constitutes the law of the case because we have determined that the proof presented by appellee in the present trial (which, we note, differed in no significant respects from the proof she presented at the first trial) constitutes substantial evidence of deceit. We view the evidence in the light most favorable to appellee, giving it its highest probative value and taking into account all reasonable inferences deducible from it. *See Mangrum v. Pigue*, 359 Ark. 373, 198 S.W.3d 496 (2004). Applying that standard, we observe that appellee presented evidence from which it could reasonably be inferred that the Aon enroller, in representing that the policy would provide double indemnity, made a false statement of a material fact concerning the amount of coverage that appellee was purchasing; that the enroller had insufficient evidence upon which to represent the existence of double indemnity and, given the enroller's other misstatements as to his identity and Antonio's qualifications for coverage, may have deliberately misrepresented the existence of double indemnity; that, in light of the enroller's objective to sell appellee a policy, it would follow that he intended for appellee to rely on his representations concerning the amount of coverage; that appellee, a minimum-wage worker with no specialized education or skills, justifiably relied on

statements by insurance representatives concerning a matter as important as the amount of insurance coverage, *see generally Manhattan Credit Co. v. Burns,* 230 Ark. 418, 323 S.W.2d 206 (1959) (stating that reliance is to be presumed when the misrepresentation goes to a material matter); and that appellee was damaged because she received only the face amount of the policy from CLIC rather than the double-indemnity amount. In light of these factors, we believe that the jury's verdict is supported by substantial evidence and that the trial court did not err in denying Aon's motion for a directed verdict or a JNOV.

### Should The Trial Court Have Deducted $60,000 From The Verdict?

The satisfaction of judgment entered by CLIC following the first trial consisted of a base amount of $1,060,000, which encompassed the $1 million in punitive damages awarded against CLIC, plus fifty percent, or $60,000, of the compensatory damages awarded in the first trial. Aon contends that, because it and CLIC were joint tortfeasors, any satisfaction of judgment paid by CLIC should be credited to any subsequent award obtained against Aon. Thus, following the jury's verdict against Aon in the second trial, it asked that such verdict be reduced by $60,000. The trial court refused to do so.

Arkansas's Uniform Contribution Among Tortfeasors Act provides that recovery of judgment from one joint tortfeasor does not discharge the other joint tortfeasor. Ark. Code Ann. § 16-61-203 (Repl. 2005). However, where a plaintiff obtains a judgment or release from one joint tortfeasor and later obtains a judgment against another joint tortfeasor, the plaintiff's first satisfaction must be credited against any subsequent recovery. *See Woodward v. Blythe,* 249 Ark. 793, 462 S.W.2d 205 (1971); *Smith v. Tipps Eng'g,* 231 Ark. 952, 333 S.W.2d 483 (1960). Procedurally, where, as in the present case, the jury has no knowledge of the prior recovery, the trial court must credit the prior recovery after the verdict is returned. *See Woodard v. Holliday,* 235 Ark. 744, 361 S.W.2d 744 (1962); *Walton v. Tull,* 234 Ark. 882, 356 S.W.2d 20 (1962).

Aon's argument would persuade but for the fact that, under the peculiar facts of this case, we cannot conclude that Aon and CLIC were joint tortfeasors. The Contribution Among Tortfeasors Act defines a joint tortfeasor as follows:

> For the purpose of this subchapter the term "joint tortfeasors" means two (2) or more persons jointly or severally liable in tort for

the same injury to person or property, whether or not judgment has been recovered against all or some of them.

Ark. Code Ann. § 16-61-201 (Repl. 2005). In the present case we are unable to determine with any level of certainty that CLIC and Aon have been held liable for the same injury.

In the first trial, the jury rendered a verdict against CLIC for bad faith and outrage, and a verdict against Aon for deceit and outrage. However, only one recovery was awarded, for $120,000; the amount attributable to each cause of action is not known. Additionally, the jury in the first trial, as did the jury in the second trial, found Aon liable for deceit, a cause of action peculiar to Aon and not shared by CLIC. We thus have a situation in which appellee obtained a judgment against Aon on a distinct tort for which no recovery was had against CLIC. More importantly, we have a situation in which we cannot tell whether the damages awarded against CLIC and the damages awarded against Aon compensate appellee for the "same injury to person or property." The injury for which appellee has now recovered — the amount of double indemnity on the insurance policy — is economic in nature, while it is entirely possible that the injury for which she recovered from CLIC is for mental anguish, emotional distress, or the like. *See Mickles I* (recognizing, in discussing appellee's outrage claim, that there was evidence that she suffered extreme distress and further recognizing that the jury's bad-faith verdict against CLIC was supported by much of the same evidence that supported the outrage claim); *see also Growth Props. I v. Cannon*, 282 Ark. 472, 669 S.W.2d 447 (1984) (holding that the essence of the tort of outrage is injury to the plaintiff's emotional well-being); *Employers Equitable Life Ins. Co. v. Williams*, 282 Ark. 29, 665 S.W.2d 873 (1974) (recognizing, in a bad-faith action, that the plaintiff had suffered from anxiety as the result of the insurer's conduct); Howard Brill *Law of Damages*, § 4-7 (5th ed. 2004) (stating that mental-anguish damages have been awarded in outrage and bad-faith cases).

Based on the foregoing, we simply cannot conclude, as a matter of law, that the $60,000 that appellee recovered from CLIC corresponds to the same injury for which she recovered from Aon. Thus, for the purposes of this issue, CLIC and Aon were not joint tortfeasors, and the trial judge was correct in

refusing to credit the $60,000 paid by CLIC.[2] We therefore affirm the compensatory verdict of $29,942.

### May Punitive Damages Be Awarded in the Absence of a Compensatory Judgment?

■ Aon argues that, if CLIC's payment of $60,000 is deducted from the jury's compensatory award, a zero verdict results, and, therefore, no judgment exists to support an award of punitive damages. *See generally Hudson v. Cook*, 82 Ark. App. 246, 105 S.W.3d 821 (2003) (recognizing that in the absence of an award for compensatory damages, punitive damages are barred). This issue is rendered moot by our previous discussion upholding the compensatory award of $29,942.

### Should The Punitive-Damage Award Be Reduced?

We follow a two-step analysis in determining whether a punitive-damages award is excessive. *See Hudson v. Cook, supra*; Howard Brill *Law of Damages*, § 9-6 (5th ed. 2004). First, we determine whether the award was excessive under state law. This entails an analysis of whether the jury's verdict is so great as to shock the conscience of the court or demonstrate passion or prejudice on the part of the jury. *See Hudson v. Cook, supra*. It also involves consideration of the extent and enormity of the wrong, the intent of the party committing the wrong, all the circumstances, and the financial and social condition and standing of the erring party. *See id.*

The second step is to evaluate the award under the federal due-process analysis set forth in *BMW of North America v. Gore*, 517 U.S. 559 (1996). Here, we determine the degree of reprehensibility of the defendant's conduct; the disparity between the harm or potential harm suffered by the plaintiff and the punitive-damages award (which ordinarily involves consideration of the ratio be-

---

[2] We also reject Aon's argument that appellee's recovery against CLIC, as principal, bars her recovery from Aon, its agent. Aon cites *Barnett v. Isabell*, 282 Ark. 88, 666 S.W.2d 393 (1984), for its holding that, where the liability of an employer for acts of an employee is wholly derivative, a judgment against the employer and satisfaction thereof bars further proceedings on the same tortious act. Again, in light of the unusual circumstances of this case, we are unable to say that CLIC's liability to appellee was "wholly derivative," given that it was directly liable for bad faith and that there is no way to determine, with any level of certainty, whether the jury considered CLIC vicariously liable for Aon's deceit.

tween the compensatory and punitive awards); and the difference between this remedy and the civil penalties authorized by statute or imposed in comparable cases. *See Advocat, Inc. v. Sauer,* 353 Ark. 29, 111 S.W.3d 346 (2003). In assessing the degree of reprehensibility, we may consider whether the harm caused was physical as opposed to economic; whether the conduct evinced an indifference to or reckless disregard of the health and safety of others; whether the target of the conduct had financial vulnerability; whether the conduct involved repeated actions or was an isolated incident; and whether the harm was the result of intentional malice, trickery, or deceit, or mere accident. *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408 (2003). *Campbell* also held that, while the United States Supreme Court would not impose a bright-line ratio of punitive to compensatory damages, in practice, few awards exceeding a single-digit ratio will satisfy due process. In addition, our supreme court has stated that, in reviewing a punitive-to-compensatory ratio, we should determine whether the ratio is "breathtaking." *Union Pac. R.R. v. Barber,* 356 Ark. 268, 149 S.W.3d 325 (2004). Our standard of review is de novo. *Id.*

 Employing our de novo review, we have given careful consideration to all of the applicable factors mentioned. Overall, we have little difficulty sustaining a substantial punitive award against Aon. Its conduct in this case, which we may consider in total, *see Superior Federal Bank v. Jones & Mackey Constr. Co,* 93 Ark. App. 317, 219 S.W.3d 643 (2005), was highly reprehensible in its dishonesty and outright fraud, particularly in light of appellee's financial vulnerability. However, we are troubled by the ratio of the punitive award to the compensatory award, which, when measured against the jury's initial verdict of $58,884, is approximately 34-to-1 and, when measured against the final judgment of $29,942, is approximately 66-to-1. Further, in reviewing several of our most recent cases decided since the *Campbell* opinion involving punitive damages imposed in connection with economic injury, we observe that the punitive-to-compensatory ratios have generally run between 1-to-1 and 17-to-1. *See, e.g., Stewart Title v. Am. Abstract,* 363 Ark. 530, 215 S.W.3d 596 (2005); *Bank of Eureka Springs v. Evans,* 353 Ark. 438, 109 S.W.3d 672 (2003); *Hudson v. Cook, supra; Superior Federal Bank v. Jones & Mackey Constr., supra.* We therefore believe that due process would best be served in this case by a reduction of the punitive award to $750,000. This figure yields a ratio of approximately 12-to-1 when compared with the jury's original verdict and approximately

25-to-1 when compared to the final judgment,[3] and is more in line with the ratios in our recent, comparable cases.

As we stated in *Superior Federal Bank v. Jones & Mackey Constr.*, *supra*, our review of a punitive-damage award is not an exact science but a fluid analysis based on the particular facts of each case. While we believe that Aon's conduct in this case justifies the imposition of an award that exceeds the single-digit rule expressed in *State Farm v. Campbell*, *supra*, we likewise believe that the circumstances of the case as a whole require a reduction of the award to a less breath-taking ratio of approximately 25-to-1 or less.

Therefore, if, within eighteen days, appellee remits $1.25 million of the punitive-damage award, leaving a punitive award of $750,000, the judgment will be affirmed. Otherwise, the case will be reversed, and the cause will be remanded for a new trial. *See Advocat v. Sauer, supra*.

Affirmed as modified on condition of remittitur.

NEAL and CRABTREE, JJ., agree.

---

[3] We make no decision in this opinion as to which compensatory figure is the proper one for this purpose.