JIM RAY, INC. *v.* Duane WILLIAMS

CA 06-789                    260 S.W.3d 307

Court of Appeals of Arkansas
Opinion delivered June 27, 2007

*Stockland & Trantham, P.A.*, by: *Thomas D. Stockland*, for appellant.

*Walters, Hamby, and Gaston,* by: *Troy Gaston* and *Bill Walters,* for appellee.

D.P. MARSHALL JR., Judge. This case arises out of Duane Williams's purchase of a new Nissan Titan pick-up truck from a dealership owned by Jim Ray, Inc. The jury returned a ten-person verdict and awarded Williams $4,425.87 in compensatory damages and $75,000.00 in punitive damages on his fraud and deceptive-trade-practices claims against the dealer. Jim Ray appeals, arguing insufficiency of the evidence, inadmissibility of expert testimony, and excessive punitive damages.

## I.

We view the proof in the light most favorable to Williams. *Stewart Title Guaranty Co. v. American Abstract & Title Co.,* 363 Ark. 530, 540, 215 S.W.3d 596, 601 (2005). And we give the jury's verdict the benefit of all reasonable inferences from that proof. *Ibid.*

In February 2005, Williams bought a 2004 Nissan Titan pick-up from Jim Ray. After driving the truck off the lot, he realized that it had about 3000 miles on it and an invoice price higher than the sticker. Williams acknowledged that he acted unwisely by signing the invoice and odometer statement without reading them. A few days later he returned to the lot, convinced Jim Ray to set the deal aside, and picked out another 2004 Titan pick-up.

This truck had a sticker price of $29,700.00. In completing the paperwork, however, Williams noticed an invoice price of $34,125.87. He pointed out the discrepancy to Austin Cauthron, Jim Ray's finance manager. Cauthron assured Williams that the figure reflected "points or credits . . ., it does not mean dollars" and that the price was $29,700.00. Based on this representation, Williams signed the invoice. He also purchased an extended warranty or maintenance agreement, which Cauthron told Williams he was required to buy, but could cancel within thirty days. Williams later determined that he had in fact paid $34,125.87 for his pick-up. He tried to cancel the warranty; Jim Ray, however, never responded.

Williams's experts testified that a year-old vehicle is not ordinarily sold above sticker price, that requiring a customer to purchase an extended warranty constitutes fraud, and that the

entire structure of Williams's deal with Jim Ray resulted in an unconscionable profit for the dealer.

■ All this testimony constitutes substantial evidence that Jim Ray knowingly misrepresented the price of the vehicle and the necessity for a warranty, intending to defraud Williams, who justifiably relied on these misrepresentations to his detriment and suffered damages. Ark. Code Ann. § 4-88-107(a)(10) (Supp. 2005); *Wheeler Motor Co. v. Roth*, 315 Ark. 318, 324, 867 S.W.2d 446, 449 (1993). This evidence is substantial even if, as Jim Ray suggests, Williams had to prove his case by clear and convincing evidence. *Ballard v. Carroll*, 2 Ark. App. 283, 290, 621 S.W.2d 484, 487-88 (1981). Jim Ray's contention that Williams could have discovered the true price of the vehicle by doing the math from other sales documents is no reason to set aside the judgment. The jury may have determined that Jim Ray's misrepresentations stopped Williams from digging into the numbers. As tempered by our common law and statutes, the salutary principle of *caveat emptor* is not a license for deceit.

## II.

■ The circuit court did not abuse its discretion by admitting the testimony of Williams's two experts. *Coca-Cola Bottling Co. v. Gill*, 352 Ark. 240, 261, 100 S.W.3d 715, 728 (2003). The experts were veterans of the car-sales business and knew more about that business than the average individual. *Coca-Cola*, 352 Ark. at 261-62, 100 S.W.3d at 728-29. Any weakness in their testimony was a matter of credibility or for cross-examination. *Coca-Cola*, 352 Ark. at 264, 100 S.W.3d at 730. The testimony was not irrelevant and unreliable, as Jim Ray claims, simply because the experts were not present at the time of the alleged misrepresentations. Expert witnesses need not have first-hand knowledge of the facts and usually do not. Their task is to assist the jury in understanding the evidence and deciding the disputed facts. Ark. R. Evid. 702 (2007). No reversible error occurred on this issue.

## III.

We turn, finally, to the main issue in this case: punitive damages. When Jim Ray challenged those damages below, the circuit court held that the $75,000.00 award did not shock the

court's conscience. This is the excessiveness standard under state common law, *Union Pacific R.R. v. Barber*, 356 Ark. 268, 300, 149 S.W.3d 325, 346 (2004), although our supreme court has also used the "shock the conscience" formulation in its federal constitutional evaluation of punitive damages. *E.g., Advocat, Inc. v. Sauer*, 353 Ark. 29, 58, 111 S.W.3d 346, 363 (2003). Jim Ray does not press the state-law point on appeal. Instead, Jim Ray argues that the circuit court erred by not addressing its further argument that the award offended the Due Process Clause of the United States Constitution. Jim Ray argues further that the punitive damages are indeed unconstitutionally excessive.

As its bench ruling shows, the circuit court considered both the reprehensibility of Jim Ray's actions and the compensatory/punitives ratio in evaluating the alleged excessiveness of the award. But the trial court explicitly declined to consider comparable penalties, and it is unclear whether the court gave the punitives verdict the searching review required by the Constitution. The circuit court should have made a thorough and independent evaluation of the amount of punitive damages using all three constitutional guideposts. *BMW of North America v. Gore*, 517 U.S. 559, 574-75 (1996); *Honda Motor Co. v. Oberg*, 512 U.S. 415, 434-35 (1994). Any error here, however, is not dispositive. We, too, are duty-bound to undertake a *de novo* review of the punitive damages awarded by the jury. *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436 (2001).

We apply familiar legal principles. Punitive damages punish and deter. Their premise is that the compensatory damages have made the plaintiff whole, but further sanctions are justified to punish the defendant for its conduct in the case and to deter future, similar conduct by the defendant and others. In evaluating whether the jury's verdict violated due process, we follow three guideposts: the reprehensibility of Jim Ray's conduct; the ratio between compensatory and punitive damages; and the available penalties for similar conduct and prior awards in similar cases. *BMW*, 517 U.S. at 574-75; *Aon Risk Servs. v. Mickles*, 96 Ark. App. 369, 378-79, 242 S.W.3d 286, 294 (2006). Our analysis is fluid rather than exact. *Ibid.* As Judge Posner has put it, we are called to police a constitutionally acceptable range, not a fixed point. *Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672, 678 (7th Cir. 2003).

*Reprehensibility.* Jim Ray deceived Williams into paying more for his Titan pick-up truck than the sticker price and tricked him into buying a warranty he might not have bought had no

misrepresentation occurred. This was not an isolated incident. Jim Ray committed the same deceit about the price of the first truck, although the dealer took that vehicle back when Williams complained. One of Williams's experts had worked at Jim Ray for a few weeks in 2002. This expert testified that Jim Ray had sold vehicles for more than their sticker price on other occasions and that the same employee Williams dealt with told him in 2002 that he sold lots of warranties by misleading consumers into thinking that their lender required one. Jim Ray's similar conduct involving others is material to the issue of reprehensibility, but this conduct may not be used as a basis for punishing Jim Ray in this case. *Philip Morris USA v. Williams*, 549 U.S. 346, 353-54, 127 S. Ct. 1057, 1063 (2007); *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 421-22 (2003).

■ We apply the settled criteria for evaluating the degree of reprehensibility of Jim Ray's conduct. *Superior Federal Bank v. Mackey*, 84 Ark. App. 1, 20-21, 129 S.W.3d 324, 337 (2003). The harm to Williams was purely economic, not physical. *Compare Advocat*, 353 Ark. at 55, 111 S.W.3d at 360-61. Jim Ray's conduct did not show indifference to Williams's health or his safety. *Compare Arrow Int'l, Inc. v. Sparks*, 81 Ark. App. 42, 55-56, 98 S.W.3d 48, 57 (2003). Williams was not vulnerable, financially or otherwise. Williams was an older gentleman, but he was experienced in financial matters: after a military career, he was the operations officer of the police department at Fort Chaffee, where he handled budgeting and procurement. *Compare Aon*, 96 Ark. App. at 379, 242 S.W.3d at 294. Jim Ray's conduct involved one transaction with Williams, not a course of dealings with him involving many bad acts during an extended period of time. *Compare Superior Federal Bank v. Jones & Mackey Construction* Co., 93 Ark. 317, 325-26, 219 S.W.3d 643, 650 (2005). The dealer's conduct toward Williams, however, tracked similar behavior involving other consumers. *Compare Mathias, supra.* The harm to Williams was neither accidental nor malicious: it represents the middling situation — harm resulting from trickery. *Wheeler, supra.*

■ The reprehensibility of Jim Ray's conduct is the most important guidepost. *BMW*, 517 U.S. at 575. Overall, the criteria indicate that Jim Ray's conduct was not highly reprehensible. All material things considered, we conclude that Jim Ray's conduct justified punitive damages but was not particularly egregious. Unless "reprehensible" is to mean nothing more than "bad" or

"tortious," then we must follow the Supreme Court's teaching and decide how reprehensible Jim Ray's conduct was. We conclude that Jim Ray's deception of Williams falls, both in quality and quantity, at the lower end of the range of reprehensible behaviors.

*Ratio.* The $75,000.00 in punitive damages is approximately seventeen times the $4,425.87 in compensatory damages. The compensatory figure is, to the penny, the difference between the Titan's sticker price and the purchase price. In *BMW*, the Supreme Court traced the long history of exemplary damages and noted that sanctions of double, triple, or quadruple damages have been commonplace. 517 U.S. at 580-81. In *Campbell*, the Court expressly declined to identify a rigid constitutional limit on the ratio between actual or potential harm to the plaintiff and the punitive damages. The Court noted, however, that few awards exceeding a single-digit ratio would satisfy due process. 538 U.S. at 425. At the same time, the Court indicated that "a particularly egregious act" resulting in only a modest amount of economic damages might justify a higher ratio, while substantial compensatory damages might justify a lower ratio. *Ibid.*

We have approved ratios greater than a single digit in cases of extreme emotional distress or humiliation, a significant disparity of bargaining power, ongoing racial animus that destroyed a business, and a "nightmarish" situation involving an improper arrest. *See, e.g., Routh Wrecker Serv. v. Washington*, 335 Ark. 232, 241-42, 980 S.W.2d 240, 244-45 (1998); *Aon*, 96 Ark. App. at 379, 242 S.W.3d at 294; *Superior Federal Bank*, 93 Ark. App. at 326-27, 219 S.W.3d at 650-51. "The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff." *Campbell*, 538 U.S. at 425.

■ After our *de novo* review, we are firmly convinced that this case falls within the mine-run of disputes where a single-digit ratio best comports with due process. Jim Ray's actions were not particularly egregious. None of the dire scenarios represented in our prior cases mirror what happened here. Unlike in *Aon*, for example, we do not face a situation involving a significant disparity in bargaining power, an unsophisticated consumer, and a mother's right to insurance benefits after the death of her young-adult son. 96 Ark. App. at 372-73, 242 S.W.3d at 289-90. This case is about

fraud in buying a pick-up. Williams suffered approximately $4,500.00 of purely economic harm from a routine commercial transaction, which he initiated.

■ This record, moreover, contains only sketchy proof about Jim Ray's financial situation. No balance sheets, tax returns, or other such documents were admitted. There was some disputed testimony about approximately how much net profit Jim Ray made each month. But this evidence fell short of demonstrating that the defendant's overall financial condition and the other circumstances would support an extraordinary ratio to achieve deterrence. *Compare Mathias*, 347 F.3d at 677-78; *Superior Federal*, 93 Ark. App. at 329-30, 219 S.W.3d at 652-53. This inquiry must be pursued with care in any event: a defendant's financial condition is a material fact, but it "cannot justify an otherwise unconstitutional punitive damages award." *Campbell*, 538 U.S. at 427. Jim Ray's actions deserve punishment, but all the material circumstances do not move this case beyond the single-digit-ratio continuum.

*Comparable Sanctions.* Finally, we assess the difference between the $75,000.00 punitive award and the applicable statutory penalties and comparable cases. These comparable sanctions represent the notice component of our due-process review. *Superior Federal*, 93 Ark. App. at 330, 219 S.W.3d at 653.

■ The State may impose criminal penalties of up to $1,000.00 for a violation of the Deceptive Trade Practices Act. Ark. Code Ann. § 4-88-103 (Repl. 2001); Ark. Code Ann. § 5-4-201(b)(1) (Repl. 2006). The Act also provides for civil penalties of up to $10,000.00, a reasonable attorney's fee, and an enhanced penalty of up to $10,000.00 in cases involving persons age sixty or older. Ark. Code Ann. § 4-88-113(a)(3) and (f) (Repl. 2001); Ark. Code Ann. § 4-88-202(a) (Repl. 2001). Our legislature has also authorized the Attorney General to seek suspension or forfeiture of the violator's license or other authorization to do business. Ark. Code Ann. § 4-88-113(b) (Repl. 2001). In similar fraud cases, the punitive awards have been between $5,000.00 and $10,000.00. *Firstbank of Ark. v. Keeling*, 312 Ark. 441, 850 S.W.2d 310 (1993); *Wheeler Motors, supra; Ray Dodge, Inc. v. Moore*, 251 Ark. 1036, 479 S.W.2d 518 (1972). After adjusting these awards upward for inflation, they are far less than the $75,000.00 awarded by this jury.

■ We see the range of comparable sanctions as between approximately $15,000.00 and approximately $40,000.00. This range reflects the adjusted awards in similar cases and the statute. In evaluating the comparable sanctions, we put to one side the purchase of the first truck for two reasons: Jim Ray unwound that deal, and we conclude it was all part of the same overall transaction in any event. The comparable civil penalty for misrepresenting the purchase price and warranty requirement on the second truck would be no more than $10,000.00, doubled to no more than $20,000.00 because of Williams's age. Attorney's fees were possible, but not mandatory. (We note that Williams pleaded his entitlement to fees, but did not seek them after the verdict.) This was a straight-forward case. The pre-trial hearing, the trial, and the post-trial hearing were all done in less than two work days. The fact that the circuit court could have awarded fees, or that the State could have fined Jim Ray something for the first truck sale, leads us to conclude that $40,000.00 best represents the top of the comparable-penalties range.

■ It was possible, of course, for the State to stop Jim Ray from doing business for a period or forever for violating the Deceptive Trade Practices Act. For several reasons, we conclude that the business–closure possibility has no application in this case. First, we have it on good authority that, absent proof this extraordinary sanction was justified because lesser sanctions had not succeeded in changing Jim Ray's conduct, the business-closure possibility is inapplicable. *BMW*, 517 U.S. at 584-85. No such proof appears of record. Second, we have held that Jim Ray's actions were not highly reprehensible. This is not a case where the record demonstrates conduct so egregious and so widespread that the civil penalty of business–closure was a real prospect. Finally, one piece of one aspect of our due–process review should not be outcome determinative in any case.

■ Considering all three guidelines and the entire record, we conclude that Jim Ray's conduct deserved a punitive award, but not one that conspicuously exceeded a single–digit ratio, as well as the available penalties and awards in comparable cases. We hold that the jury's award was unconstitutionally excessive. We therefore remit the punitive damages award to $30,000.00. This award represents a ratio of about seven to one. Even though Jim Ray's conduct was not particularly reprehen-

sible, we conclude that this higher ratio is justified in light of the modest compensatory damages awarded and the need to deter similar, future conduct.

If, within eighteen days, Williams accepts the remitted award, then the judgment will be affirmed as modified. Otherwise, the judgment will be reversed and the case remanded for a new trial on liability and damages. If there is a new trial, then all the issues should be re-tried because the proof supporting liability and both kinds of damages was inextricably intertwined. *Shepherd v. Looper*, 293 Ark. 29, 31, 732 S.W.2d 150, 152 (1987).

Affirmed as modified on condition of remittitur.

PITTMAN, C.J., and GLADWIN, BIRD, and GLOVER, JJ., agree.

HART, ROBBINS, GRIFFEN, and BAKER, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. I join Judge Baker's dissent because I would affirm the jury's award of punitive damages in this case. However, I write separately to highlight two areas of the majority's opinion that I find disquieting.

First, the majority concludes that Jim Ray's "purely economic" behavior was "not highly reprehensible" and was "not particularly egregious." The jury, who was the trier-of-fact, obviously disagreed. Jim Ray's general manager testified that, whereas the dealership customarily makes a $300-$400 profit on the sale of a vehicle, it made a profit of $3500 on the sale to Williams — *approximately ten times* its customary profit. It is bewildering to me how a double-digit profit that resulted from repeated and deliberate fraudulent behavior is not egregious enough to support a double-digit award of punitive damages.

Second, the fact that there were no personal injuries in this case does not mean that Jim Ray's conduct was not wanton and willful. The United States Supreme Court clearly recognizes that a higher punitive-to-compensatory damages ratio may be justified where a particularly egregious act has resulted in only a small amount of economic damages. *See State Farm. Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). Because that is precisely what happened in this case, I cannot join the majority's opinion, which treats "purely economic" loss as the stepchild in the punitive damages lexicon.

KAREN R. BAKER, Judge, dissenting. The only issue that the other dissenting judges and I cannot join in the

majority's opinion is its decision to remit the punitive-damages award finding that the award violates due process as unconstitutionally excessive. The role of judicial review in a punitive damages case requires adherence to our supreme court's admonition that we defer to the jury's judgment by focusing on whether the evidence *could* support the jury's verdict:

> Punitive damages are to be a penalty for conduct that is malicious or done with the deliberate intent to injure another. We have also held that "where, in light of the evidence, the jury could have concluded that appellants displayed a conscious indifference for appellee and that their acts were done with the deliberate intent to injure her, the amount of punitive damages did not shock our conscience." When conducting our review of an award of punitive damages, we view the evidence in the light most favorable to the appellee.

*Bank of Eureka Springs v. Evans*, 353 Ark. 438, 456-57, 109 S.W.3d 672, 683 (2003) (internal citations omitted).

A jury set the punitive damages award; the trial judge who heard all of the evidence and observed the witnesses found the award acceptable and refused to remit the damages. Four of the nine members of this court considering the case would also refuse to disturb the jury's verdict. However, evaluation of an award of punitive damages is not merely an independent review and substitution of judgment by majority. A judicial substitution of opinion concerning a jury award of punitive damages is not the standard to which we must adhere.

Instead, our focus on review is, as the majority notes, "to police a constitutionally acceptable range." *See Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d. 672, 678 (7th Cir. 2003). One aspect of policing that range is reviewing the ratios of punitive and compensatory damages. Our court recently reviewed the range of ratios in punitive damages cases and, according to this court's analysis, the verdict before us falls within the range of expected verdicts:

> Further, in reviewing several of our most recent cases decided since the *Campbell* opinion involving punitive damages imposed in connection with economic injury, we observe that the punitive-to-compensatory ratios have generally run between 1-to-1 and 17-to-1. *See, e.g., Stewart Title v. Am. Abstract*, 363 Ark. 530, 215

S.W.3d 596 (2005); *Bank of Eureka Springs v. Evans*, 353 Ark. 438, 109 S.W.3d 672 (2003); *Hudson v. Cook, supra; Superior Federal Bank v. Jones & Mackey Constr., supra.* (factors mentioned). Overall, we have little difficulty sustaining a substantial punitive award against Aon. Its conduct in this case, which we may consider in total, *see Superior Federal Bank v. Jones & Mackey Constr. Co.*, 93 Ark. App. 317, 219 S.W.3d 643 (2005), was highly reprehensible in its dishonesty and outright fraud, particularly in light of appellee's financial vulnerability.

*Aon Risk Servs. v. Mickles*, 96 Ark. App. 369, 379, 242 S.W.3d 286, 294 (2006).

Regarding the ratio of punitive to compensatory damages, the ratio in this case is just under 17 to 1. In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), the United States Supreme Court held that, while it would not impose a bright-line ratio of punitive to compensatory damages, in practice, few awards exceeding a single-digit ratio will satisfy due process. However, our courts have not been reluctant to exceed the single-digit ratio where the circumstances warrant. *See Aon Risk Servs., supra* (25 to 1); *Superior Fed., supra* (17.6 to 1); *Routh Wrecker, supra* (75 to 1). The ratio in this case is certainly not comparable to the 500 to 1 ratio that the United States Supreme Court found unconstitutional in *BMW of North America v. Gore*, 517 U.S. 559 (1996), or the 145 to 1 ratio in *Campbell.*.Moreover, the Court recognized in *Campbell* that a higher ratio may be upheld where a particularly egregious act has resulted in only a small amount of economic damages. That is the situation here, where appellant's deliberate fraud resulted in compensatory damages of a little less than $4500.

The due process aspect of our review requires a determination of whether the punitive damages unconstitutionally exceed the notice of potential penalties to which appellant was subjecting itself by its actions. When we consider how the punitive damages awarded by the jury compare with applicable statutory penalties, the ratio between the punitive damages awarded and the statutory penalties to which appellant was subject drops considerably. The Arkansas Deceptive Trade Practices Act, at Ark. Code Ann. § 4-88-103 (Repl. 2001), provides that one who knowingly and willingly violates the ADTPA may be guilty of a Class A misdemeanor, which carries a maximum fine of $1000. Ark. Code Ann. § 5-4-201(b)(1) (Repl. 2006). The ADTPA also provides that a violator may be assessed a penalty of up to $10,000, Ark. Code Ann. § 4-88-113(a)(3) (Repl. 2001), and that a person who suffers

actual harm or injury as a result of a violation has an independent cause of action for reasonable attorney's fees. Ark. Code Ann. § 4-88-113(f) (Repl. 2001). Given the fact that appellant violated the act in two transactions with appellee, appellant was on notice that the penalties under those statutes could be $22,000 plus attorney's fees and the costs of recovery expended by the State. In addition, appellee was sixty-nine years old at the time appellant fraudulently obtained its profits from appellee. Subchapter 2 of the Deceptive Trade Practices Act provides for enhanced penalties for practices targeting the elderly. Section 4-88-201 defines the elderly as anyone over the age of sixty. The enhanced penalty is an additional amount up to $10,000 for each violation. Ark. Code Ann. § 4-88-202 (Repl. 2001).

Accordingly, appellant had notice that, under the statutory scheme for penalties, it was subject to $42,000 plus fees and costs in addition to the compensatory damages. Given that appellant had notice under the statutory structure that it could be liable for the mandatory attorney compensation, the $42,000 statutory penalties, plus the compensatory damages, the ratio between the awarded punitive damages and clearly identified penalties to which appellant had notice is less than 2 to 1. The statute further provides that appellant was subject to a suspension or forfeiture of its charter, franchise, or suspension of the company's authorization to do business in this state. The forfeiture or suspension of the company's authorization to conduct business in this State would necessarily result in a loss of all future profits.

Although the majority holds that the jury's award of punitive damages fails to comport with federal due process, an independent review shows that the punitive-damage award unswervingly comports with due process. Not only did appellant have ample notice through our statutory scheme that its action could result in such a penalty, it had notice that its use of deceptive practices subjected it to a loss of all future profits in this State by a forfeiture of its license to do business in this State. Additionally, as the majority notes, the purpose of punitive damages is both to punish and to deter. Given the testimony in this case that appellant made a considerable, unconscionable profit as the result of its fraudulent conduct, and that this conduct was carried out as a course of business, it is reasonable that a jury would impose a punitive award large enough to act as an economic deterrent to future, similar conduct. The remitted award allowed by the majority will make this course of conduct once again profitable

when appellant has sold seven cars in this manner. It was not unreasonable of the jury to require that seventeen cars be sold in this manner before this method of operation once again became profitable. If we are merely policing a constitutionally acceptable range, as the majority asserts, the jury's award should stand.

HART, ROBBINS, and GRIFFEN, JJ., join.